FASSETT v. EWART MANUF'G CO.

(Circuit Court of Appeals, Seventh Circuit.　May 31, 1894.)

No. 145.

1. PATENTS—DECISION OF PATENT OFFICE—ON INTERFERENCE.

A decision by the patent office in an interference proceeding is conclusive between the parties, even if wrong, when no steps have been taken to set it aside. 58 Fed. 360, affirmed.

2. SAME—SECOND PATENT TO SAME PATENTEE—MACHINE FOR COUPLING CHAIN LINKS.

The Fassett patent, No. 377,376, for a machine for coupling chain links by an endwise motion, and also by a sidewise motion, being substantially for a combination, with broader claims, of the machines described in patent No. 347,338, to the same patentee, and in application No. 174,-962, filed by him, is void. 58 Fed. 360, affirmed. Miller v. Manufacturing Co., 151 U. S. 186, 14 Sup. Ct. 310, followed.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

This was a suit by Nelson B. Fassett against the Ewart Manufacturing Company for infringement of a patent. The circuit court dismissed the bill. 58 Fed. 360. Complainant appealed.

The appellant filed his bill in the court below to restrain the infringement of letters patent 377,376, issued February 7, 1888, for "machine for coupling chain links." Prior to 1874, outdoor machinery was operated by leather or rubber belting. In that year William B. Ewart invented an attachable link metal belt to overcome the objections found to obtain with respect to leather and rubber belting. The novelty of the invention consisted in the form of the link, it being capable of being made into a chain of any desirable length by assembling or coupling the necessary number of links together by a side motion, the end bar of one link being forced into the hook of a companion link by forcing the link sidewise while standing at an acute angle to the link with which it is being coupled. This invention was patented on September 1, 1874, and its validity sustained in Ewart Manuf'g Co. v. Bridgeport Malleable Iron Co., 31 Fed. 151. About 1881 the complainant invented a detachable chain link, which differed from the Ewart link in that it was so constructed that it could not be coupled with another link by a sidewise motion, but only by an endwise motion. A patent therefor seems to have been issued to him February 22, 1881, No. 237,967. Prior to 1882 these links were assembled or coupled by hand. During the winter of 1882–3, Mr. Fassett invented and constructed a machine for assembling the links together, and operated the same experimentally in the first half of the year 1883. This machine assembled the links of the drive chain together by an endwise thrust of the links. In January, 1884, one Eugene L. Howe constructed, and on the 6th day of October, 1884, applied for a patent for, a machine for assembling the links of a drive chain together by a sidewise thrust suitable to assemble the Ewart chain links; which machine was put in operation and publicly used by the appellee in January, 1884, and has been continued to the present time. On the 8th of April, 1884, the complainant, Mr. Fassett, filed a caveat in the patent office, which he renewed on April 4, 1885, for the term of one year. On the 6th of October, 1884, Mr. Howe filed his application in the patent office for a patent upon his machine, which resulted in the issuance to him, as assignor to the Ewart Manufacturing Company, the appellee, of letters patent No. 317,790, dated May 12, 1885. On the 21st of August, 1885, the complainant, Fassett, filed in the patent office an application, serial No. 174,961, which resulted in the issuance to him of the patent No. 347,338, dated August 17, 1886. This patent is known as case A. On the 21st of August, 1885, Mr. Fassett also filed in the patent office his application, serial No. 174,962, which is known as case B. On the 7th of September, 1886, an interference in the patent office was declared between the Howe patent, No. 317,790, and the Fassett application, case B., which resulted in a decision

by the examiner of interferences on February 21, 1889, in favor of Howe, which decision was affirmed by the examiner in chief on October 1, 1889, and by the commissioner of patents, upon a further appeal, on February 21, 1890. By this decision the commissioner awarded to Howe priority in invention of the subject-matter covered by the four claims of the Howe patent, and the first five claims of the Fassett case B. This decision has been acquiesced in by the complainant. Case A. was an application for a machine for coupling chain links by an endwise motion. It was an exact reproduction of Fassett's first machine, as shown by his model, with the exception that it is provided with a thrust bar, as in the Howe machine, instead of a sprocket wheel, for pushing or drawing the chain through the chain channel. This change was made in May or June, 1885, after the issuance of the patent to Howe, and its character is thus stated by Mr. Fassett: "The sprocket wheel and ratchet wheel attached together for feeding the assembld links forward through the machine were taken off, and a thrust bar substituted in their place for pushing the links forward in the machine after they were coupled."

The further facts touching the character of the invention and claims asserted are sufficiently stated in the report of the decision of this cause by the court below (Fassett v. Manufacturing Co., 58 Fed. 360), to which reference may be made.

Banning & Banning, for appellant.

Kerr & Curtis and L. Hill (L. Hill, of counsel), for appellee.

Before JENKINS, Circuit Judge, and BAKER, District Judge.

JENKINS, Circuit Judge. We are of opinion that this case is ruled by the case of Miller v. Manufacturing Co., 151 U. S. 186, 14 Sup. Ct. 310. There the patentee filed an application for an improvement in cultivators, consisting of a double-acting spring, the function of which was to depress the cultivators when inserted in the ground, and to lift them when raised above the dead point, the lifting power of the spring increasing as the plow beam rose. Two claims were made, one for the double action of the spring, and the other for the increasing lifting power of the spring as it rose. In anticipation of interference with other pending applications, the application was divided, with a view to obtain one patent for the lifting and depressing effect of the spring, and another for the lifting power of the spring increasing as the beams rise; the latter being sought upon the original application, and the former based upon a divisional application subsequently filed. The drawings and descriptions of the two applications were alike. The patent was allowed on the divisional application during the time that the original application remained in interference, and a patent was thereafter granted on the latter for the single effect of increasing the lifting power. The court, upon a review of the authorities, announced the conclusion reached upon the question of law involved, in the following language (page 198, 151 U. S., and page 310, 14 Sup. Ct.):

"The result of the foregoing and other authorities is that no patent can issue for an invention actually covered by a former patent, especially to the same patentee, although the terms of the claims may differ; that the second patent, although containing a broader claim, more generical in its character than the specified claims contained in the prior patent, is also void; but that, where the second patent covers matter described in the prior patent essentially distinct and separable from the invention covered thereby, and claims made thereunder, its validity may be sustained. In the last class of cases, it must distinctly appear that the invention covered by the latter patent was a separate invention, distinctly different and independent from that covered by the

first patent; in other words, it must be something substantially different from that comprehended in the first patent. It must consist in something more than a mere distinction of the breadth or scope of the claims of each patent. If the case comes within the first or second of the above classes, the patent. is absolutely void."

The court then observed (page 199, 151 U. S., and page 310, 14 Sup. Ct.), with respect to the patent there involved:

"It clearly appears from a comparison of the two patents, and their respective specifications and drawings, that the first function or object of the patent of 1879, relating to the lifting power of the spring, is identical with the sole object or function covered by the patent of 1881, and that the improved device and combination for the accomplishment of the lifting operation are identical in both patents. The invention covered by the first patent, as stated in the specification, consists in a spring which serves the double purpose of lifting or holding down the plows at will; and it is further stated that one spring may be adapted to serve all, or either one, or more, of the offices above enumerated. The patent of 1879 thus embraces both the lifting and the depressing. effects or operations of the spring device, while that of 1881 seeks to cover only the increased lifting effect of the same device. The first patent clearly includes the second. No substantial distinction can be drawn between the two. which have the same element in combination, and the same spring arrangement and adjustment to accomplish precisely the same lifting effect, increasing as the beams are raised from their operative positions. The matter sought to be covered by the second patent is inseparably involved in the matter embraced in the former patent, and this, under the authorities, renders the second patent void. If the two patents in question had been granted to different parties, it admits of no question that the last would have been held an infringement of the first, for the reason that the patent of 1879 just as clearly includes, as a part of the invention, the increased lifting effect of the spring device, increasing as the beams are raised, as that disclosed in the patent of 1881."

And with respect to the claimed reservation in the first patent, the court said (page 201, 151 U. S., and page 310, 14 Sup. Ct.):

"This conclusion is in no way affected by the reservation, attempted to be made in the 1879 patent, of the 'broad idea of a lifting spring which acts with increasing force as the beam rises,' for the reason that the broad idea sought to be reserved is embodied in identically the same mechanical device constituting the invention and covered by the first patent, which completely occupies all the ground that was reserved. The spring and its connecting apparatus is the same in each patent, and the claims of the first covered the double automatic action, upward or downward. There is nothing in the specification or claims to indicate that in the first patent the lifting action is in any degree slighter or weaker, as the beam rises, than in the second patent. On the contrary, both specifications clearly indicate that the spring device acts with increasing force in each patent as the beam rises. In addition to this, it distinctly appears that every claim of the 1881 patent could have been properly included and made a part of the claims of the 1879 patent. With the exception of the first broad claim of the 1881 patent, each of the other claims includes the spring device, with the limiting and qualifying words 'substantially as described,' and, by virtue of its reference to the specification, the lifting element of the spring device is shown to be the same in each patent. There is nothing in either patent, or the specification or claims thereof, to indicate that there is any greater or stronger lifting action in the one than in the other. It is thus shown that one and the same mechanical device, which covers the entire invention, is described in each of the patents; and the effort to secure a second patent on one part thereof, or on its function, after such part, or its action, had been clearly described and covered by a prior patent. cannot be sustained. To hold, under these circumstances, that the first and second patents, in respect to the lifting effect of the same spring device, present distinct inventions, or that both are valid for the same invention, would involve the drawing of distinctions too refined for the practical administration. of the patent law."

Applying the principles thus authoritatively announced to the case in hand, we are unable to avoid the conclusion that the result reached by the court below was correct.

So far as respects the Howe patent, and the machines made and used by the defendant thereunder, it is clear that the decisions of the patent office in favor of the Howe patent have been acquiesced in by the complainant for such length of time as to work an abandonment of any claim to the invention therein involved. Gandy v. Marble, 122 U. S. 432, 7 Sup. Ct. 1290.

It is clear that the facts of this case bring it fully within the principle announced in Miller v. Manufacturing Co., above referred to. Case C. described the same machine as was involved in case A. It contained an exact reproduction of the 10 figures of case A., and a literal copy of the descriptive part of the specification, and, in addition, two figures (11 and 12), taken from case B., illustrating the operation of the side-thrust motion. In other words, case A. describes a machine for coupling chain links by an endwise motion. case B. describes a machine for coupling the links by a sidewise motion, and case C.—being the patent here involved—covers machines for assembling chain links by an endwise motion and also by a sidewise motion. It is substantially the combination of case A. and of case B. The most that can be said for it is that—as asserted by Mr. Fassett himself—the claims in case C. are broader in their purport than those of case A. But it is only a second patent, and a broader patent, upon the principal subject-matter of case A. We are unable to distinguish this from the Miller Case. As was well asserted by the learned counsel for the appellee, in both cases there is a prior patent for the same machine, but with more limited claims; in both all the claims of the second or broader patent might have been predicated upon the earlier patent; in both the validity of the second patent was contested because of a reservation in the earlier patent; and in both the second patent, if valid, would have the effect of prolonging the term of monopoly of the machine for which the earlier patent was granted. We think the matter so clear that further consideration of the subject is not required.

The decree will be affirmed.