MERCANTILE TRUST CO. et al. v. SOUTHERN STATES LAND & TIMBER CO., Limited, et al.

McDONNELL et al. v. MERCANTILE TRUST CO. et al.

(Circuit Court of Appeals, Fifth Circuit. March 15, 1898.)

No. 627.

**1. INSOLVENT CORPORATION—LIEN OF JUDGMENT CREDITORS.**

When a corporation becomes insolvent, and a court of equity has, on the filing of a bill by the proper parties, seized the property and appointed a receiver, a creditor who obtains a judgment at law after such bill is filed and receiver appointed, does not thereby acquire a legal or equitable lien on the property not covered by a mortgage.

**2. MORTGAGE—LIEN ON LOGS AT MILLS.**

Where, by the terms of a mortgage executed by a corporation, it had the right to enjoy the mortgaged premises, to cut and remove logs for the mills, to manufacture lumber from them, and to pledge or sell that lumber, when the corporation becomes insolvent, and a bill is filed and receivers appointed, the logs cut from the land and removed to the mills, and the lumber manufactured from such logs, are not subject to the mortgage lien.

**3. INSOLVENT CORPORATION—DISTRIBUTION OF ASSETS.**

Where proceeds of mortgaged property of an insolvent corporation have been subjected to the satisfaction of the mortgage creditors, such creditors are entitled to a decree for any balance that may be found due them, and as to such balance they are on a par with other general creditors, and are entitled to their pro rata share of the funds on which there is no lien.

Appeals from the Circuit Court of the United States for the Southern District of Alabama.

D. P. Bestor, J. W. Gray, W. A. Blount, A. C. Blount, Jr., Leopold Wallach, and Alex. C. King, for appellants.

John C. Avery, Gregory L. Smith, and Harry T. Smith, for appellees James McDonnell and others and for cross appellants James Pollock and others.

Before PARDEE and McCORMICK, Circuit Judges, and SWAYNE, District Judge.

McCORMICK, Circuit Judge. The Southern States Land & Timber Company, Limited, is an English corporation. In May, 1889, it was the owner of a large lumber milling property situated in the states of Alabama and Florida. On May 17, 1889, it conveyed this property, described in the deed, to trustees named in the deed, to secure an issue of 1,350 coupon bonds, of £100 each. The deed of trust and the bonds made elaborate provision for the conduct of the company's business, the payment of interest, and the payments to the sinking fund. Of the issue of bonds under this deed of trust, George H. Moore, the original complainant in this suit, became the owner of 243. The mortgagor company made default in the payment of interest and in the payments to the sinking fund; and on April 6, 1895, George H. Moore, the original complainant, in behalf of himself and all other first-mortgage bondholders (who may come in and pay their pro rata share of the expenses of this suit) of the Southern States Land & Timber Company, Limited, exhibited his bill against that company and the trustees named in the

mortgages (there was a second mortgage) to one of the judges of the circuit court for the Southern district of Alabama. Besides the cus-tomary and appropriate allegations in a bill for the foreclosure of a mortgage, the original bill in this case alleges that the mortgagor com-pany is largely indebted to other persons than the holders of the bonds under the mortgage sought to be foreclosed; that the aggregate of these debts to other persons exceeds $100,000; that some of these creditors reside abroad; that a large part of the property of the com-pany, consisting of sawn timber and lumber, is pledged to secure a part of this indebtedness; that there are due the company various sums on open account in various parts of the United States; that the company also has cargoes afloat destined to various parts of the world; that, being a foreign corporation, its property is subject to garnishee process and attachment in various parts of the United States; that a large part of the value of the properties of the company lies in the unity and in-tegrity thereof, and to dismember the same would be to destroy that value to a great extent; that the company is now insolvent, and unable to meet its maturing obligations, and that there is a great danger, un-less the assets of the company are marshaled, and the respective priori ties of the debts and liens ascertained, that a multiplicity of suits will result, threatening discordant decisions from different courts, especially between the courts of the United States and the kingdom of Great Britain and other foreign countries, concerning the relationship of the various secured creditors growing out of pledges of property and other equities in the property respectively pledged to them, thereby threaten-ing a maze of litigation and counter litigation that would entail great loss to the trust estate; that, to prevent this multiplicity of suits, a general bill for taking the accounts, ascertaining and fixing respective priorities, marshaling the assets, and preserving the trust estate is necessary. After prayer for process, the prayer is that the court shall decree that the mortgage dated the 17th day of May, 1889, is a first lien on all of the property therein described, and ascertain the amount of the bonds and unpaid interest due thereon and entitled to the benefit of that mortgage, and ascertain the amount due for principal and interest on the mortgage debt, and in default of the payment of that sum by a short day, to be named, to decree the foreclosure of the mortgage and order the sale of the mortgaged property according to the usual prac-tice in equity; that a single decree administering the entire property as a single trust estate, and adjudging the rights of the several security holders and lien holders and other parties to such suit, be rendered in the cause, and that the trust estate be administered in accordance with such decree in this suit; that the assets of the company be marshaled, and the debts of the same be ascertained, with their rank and dignity, and that the rank and dignity of the several mortgages and other liens covering any portion of the property of the company be ascertained and fixed by the decree, together with an ascertainment of the property covered by it; that a proper decree for the sale of the other property of the company, which may be held not to be covered by the lien of the mortgage of May 17, 1889, not hereinbefore prayed to be sold, shall be so framed that a purchaser may have the opportunity of buying the same as an entirety, and that an accounting be had to determine what,

If any, property is subject to specific liens, the amount of such liens, and the priority of the several claimants thereto, and that pending the entry of such final decree a receiver or receivers be forthwith appointed of all and singular the property of the company, with power and authority, under the direction of the court, to operate the same, with the usual power and duty of receivers and managers of such property; and that until an application for the appointment of such receivers can be heard, and until the appointment of the same, the court will issue an injunction or restraining order prohibiting the defendant mortgagor company, or any of its officers, agents, or other persons, in possession of its property or any part thereof, from selling, transferring, conveying, or otherwise disposing of or incumbering, any of the corporate property, or delivering the possession thereof to any one, except to the receiver or receivers to be appointed by the court in this cause.

At the same time (April 6, 1895) the Southern States Land & Timber Company, Limited, defendant in the bill, appeared and answered that the allegations of the bill are substantially true, and that the defendant submits the complainants' application to the honorable court for such action in the premises as to it may seem meet and just and in accordance with the usual practice in equity. Thereupon, on the same day, the court passed its decree granting the prayer of the bill asking for the appointment of receivers and the issuance of an injunction, and on April 8, 1895, the receivers took possession of all the property of the debtor company, and continued the operation and business thereof under decrees of the court. They made sales, in due course of trade, of the lumber and other goods on hand held for sale. and from time to time made considerable needed improvements and repairs on the plant used in the operation of the business.

On the 26th of June, 1895, James McDonnell and 13 others, creditors of the Southern States Land & Timber Company, Limited, presented severally their petitions to intervene in this suit. The 13, referring to the petition of James McDonnell, joined therein. Subsequently other like creditors, by separate applications, joined in the petition of intervention of James McDonnell. After showing the nature of their claims, and the times within which each arose, they show that on the 5th of June, 1895, and on different subsequent dates, they had obtained judgments in the state courts against the Southern States Land & Timber Company, Limited, on the part of the indebtedness due to each which had then matured, and had caused executions to be issued on the judgments, and placed in the hands of the sheriff of the county in which the property of the debtor company was situated. They prayed to be made parties to this suit, and that at the hearing of this cause the honorable court will be pleased to take cognizance of their claims, and of the claims of such other persons, similarly situated, as may hereafter join therein, and decree the amount due them, and cause the property and assets (not subject to the lien of the mortgage sought to be enforced by the original bill of complaint), or the proceeds thereof, to be applied to the payment of the indebtedness due to them, and to such other persons holding proper liens or claims against the same, in the proportion to which each may be entitled,

and that this honorable court will grant to petitioners and those joining therein such other and further relief as they may be entitled to in the premises. Certain amendments to the petitions for intervention and certain orders in reference thereto were made which it is not necessary to notice.

On the 6th of February, 1896, the interveners moved the court for the appointment of a special master, and for an order of reference to him to hear evidence upon and ascertain and report to the court what property the debtor company owned at the time of the appointment of the receivers which was not covered by either of the mortgages described in the original bill of complaint; what property was covered by either one of the mortgages and not by the other; what disposition the receivers had made of any of the properties, and what part still remained on hand; what part of the unmortgaged property had been used in the betterment of the mortgaged property, and what part of the unmortgaged property had been used in the payment of labor and other expenses or purchase money in the production or procurement of other assets on hand, or proceeds of which or that into which they have been converted, and are now in the hands of the receivers; what portions, if any, of the unmortgaged property have the petitioners or any of them (indicating which) any lien upon or legal or equitable right to be paid therefrom, and whether or not they, or any of them, have any legal or equitable right to a lien upon the property covered by the mortgages, to the extent, if any, to which any of the unmortgaged properties have been used by the receivers in the betterment of the mortgaged property; what amount is due to each of the petitioners; and to what extent, if any, these several indebtednesses constitute liens upon any of the property of the company, or any portion thereof, and as to the priority of such liens with regard to the mortgages described in the bill of complaint. · This motion was granted, and John E. Mitchell, Esq., was appointed special master, and the reference was made to him February 7, 1896.

On May 20, 1896, the court passed the following decree:

"This cause coming on to be heard upon the bill of complaint and exhibits thereto, and the decree pro confesso heretofore rendered in this cause against the defendants, and the same being duly considered and understood by the court, the court is of the opinion that the complainants are entitled to relief. It is therefore ordered, adjudged, and decreed that it be and it is hereby referred to Richard Jones, clerk of the court, as special master (the parties to the litigation, by their solicitors in open court, consenting to such appointment, and the court considering such consent sufficient special reason therefor), to ascertain and report, within sixty days from the date hereof: (1) The number and amount of the outstanding and unpaid debentures issued by the said Southern States Land and Timber Company, and secured by the said deed of trust dated on, to wit, the 17th day of May, A. D. 1889, and the amount of interest due thereon. (2) The names of the holders or owners of said debentures, and the number and amount of such debentures held by each. The said master shall cause to be published in the London Times, a newspaper published in London, England, and also in a newspaper published in the city of New York, state of New York, a notice calling upon all holders or owners of said debentures to present their said debentures to said Richard Jones, or to John A. Shields, United States commissioner, residing in the said city of New York, within the time named in said

notice (which time shall be not less than thirty days from the date of the first publication in said London Times), and they shall also present a statement showing the name of the owner or holder of said debentures. The holders or owners of said debentures may present their said debentures to said John A. Shields, together with a statement of the name of the owner or holder of said debentures, and procure from the said Shields, as United States commissioner, a certificate under his hand and official seal, stating the name of the holder, the number or numbers of the debenture or debentures, and the amount thereof, which certificate such holder or owner may present, in lieu of said debentures, to the said Richard Jones, as master, within the time stated in said notice, or within five days thereafter, and which certificate shall be presumptive evidence of the facts stated therein. Said notice provided above to be given by publication shall be by insertion twice a week for two successive weeks in said newspapers."

On the 10th of June, 1896, the report of the special master, John E. Mitchell, was filed, and to it the interveners filed numerous exceptions, the nature of which is sufficiently shown in the ruling of the court thereon announced July 27, 1896, to the effect: (1) The court will recognize the priority of those judgment creditors who have obtained judgments prior to the decree pro confesso rendered in this cause, and who would have obtained by the levy of an execution such priority if no obstacles had stood in the way of the levy of such process by the action of the court and its appointment of receivers to take possession of the property of the defendant. And the court holds that the interveners whose judgments were recovered before the decree, though after the appointment of receivers, shall have a lien upon all the property and effects of the defendant not covered by the mortgage, and in the hands of the receivers, and recognizes the right in the interveners paramount to the other creditors to be paid out of such property and effects. The lien is not one that can be enforced or perfected by an execution because of the rule that a judgment recovered after the appointment of a receiver does not become a lien upon the property in the hands of the receiver, but it is such a lien as will be recognized in equity. The petitions herein were filed before any order calling creditors in to establish their claims, and before any decree pro confesso against the defendant was rendered, and its insolvency adjudicated, and the judgments set up were obtained prior thereto. (2) The court holds that the logs cut from the land covered by the mortgage, and removed to the mills, and the lumber manufactured from such logs, are not covered by the mortgage lien. The exceptions to that part of the master's report finding that petitioners have no lien and are entitled to no priority of payment are sustained; also the exceptions to that part of the report finding that petitioners have no lien or right to priority of payment out of the property and effects of defendant not covered by the mortgage are sustained. The exceptions to that part of the report finding that the logs and lumber are covered by the mortgage lien are sustained, and the exceptions to that part of the report finding that railway equipments are covered by the mortgage are sustained. The exceptions to that part of the report finding that the mills at Millview, Fla., are covered by the mortgage, are overruled. In accordance with which announcement the court the same day (July 27, 1896) passed the following decree:

"This cause coming on to be heard on the interveners' exceptions to the report of the special master, John E. Mitchell, and the same being argued by the solicitors for the parties, and being considered by the court, it is now ordered, adjudged, and decreed that the exceptions to that part of said report which finds that said interveners have no lien and are entitled to no priority of payment out of any of the property of the. defendant are sustained; also the exceptions to that part of the report which finds that none of the interveners have a lien or a right to priority of payment out of the property and effects of the defendant not covered by mortgage are sustained; also the exceptions to that part of the report which finds that the logs and lumber are covered by the mortgage lien are sustained; and also the exceptions to that part of the report which finds that railway equipments are covered by the mortgage are sustained. It is further ordered, adjudged, and decreed that the exceptions to that part of the report which finds that the mills, machinery, etc., at Millview, Florida, are covered by the mortgage, are overruled; and it is further ordered, adjudged, and decreed that all other exceptions to said report not herein specifically passed on shall remain open to be disposed of at a future day of the court."

On the 18th of June, 1896, a decree had been passed amending the decree of reference to Richard Jones, special master, so as to authorize and instruct him to report the names of all the creditors of the defendant the Southern States Land & Timber Company, Limited, and the amount due to each (other than the names and amount due to the debenture holders secured by the deed of trust dated on the 17th of May, 1889); also what liens any of said creditors may have upon any of the property of the company, and a description of the property upon which the liens may be claimed; also what property is covered by the deed of trust of date May 17, 1889. The report of the special master, Richard Jones, was filed September 19, 1896. In it this passage appears:

"The creditors other than the holders of the debentures secured by the deed of trust of May 17, 1889, who claim a lien upon any of the property of said Southern States Land and Timber Company, are the judgment creditors named in class A of this report, and I have heretofore stated the personal property upon which they have a lien; and the manner in which such lien arose was that they were diligent, and secured judgments against said defendant before the decree pro confesso was entered in this cause in favor of the complainants, and said judgment creditors were decreed by this honorable court on July 27, 1896, 'to have a lien upon all the assets of the defendant not covered by the mortgage, and recognizes the right in them paramount to the other creditors to be paid out of such assets and effects.'"

The report is elaborate, covering all the ground embraced in the reference. The interveners filed very numerous exceptions to it, of which those relating to the creditors Charles Seales and John J. Fitzgerald were sustained. The complainants also filed 21 exceptions to the report, of which those numbered 14, 15, 17, 18, 19, 20, and 21, not necessary to be set out here, were sustained. All other exceptions to the report were overruled, and that report in all other respects confirmed, by a decree passed the 4th of February, 1897. The exceptions of the complainants that were overruled are as follows:

"(1) Because said master reports that the judgment creditors who have obtained judgments against the Southern States Land and Timber Company prior to the decree pro confesso rendered on November 4, 1895, have liens upon all the assets of the said company not covered by the mortgage of May 17, 1889, and have priority over the other creditors, and are entitled to be paid first out of such assets and effects. The bill in this cause is a general creditors' bill, and

the said judgment creditors, having obtained their judgments subsequent to the filing of the bill in this cause, thereby acquired no lien superior to the other creditors of said Southern States Land and Timber Company.

"(2) Because the bill filed in this cause is a bill for the administration of the assets of an insolvent corporation, and a distribution thereof among all the creditors of such corporation, and the said judgment creditors, having obtained their judgments subsequent to the filing of the bill in this cause, thereby acquired no lien superior to the other creditors of said Southern States Land and Timber Company.

"(3) Because the master reports among the property upon which said judgment creditors of said Southern States Land and Timber Company have a lien certain logs which the receivers had on hand on June 11, 1895, and valued at $17,567.65, because said master has failed to deduct, from said sum of $17,567.65, $86^9/_{10}$ per cent. of the value of said logs, which $86^9/_{10}$ per cent. of said logs were cut from the lands covered by said deed of trust of May 17, 1889, and were therefore covered by said deed of trust.

"(4) Because the master has reported among the property upon which said judgment creditors of said Southern States Land and Timber Company have a lien certain logs of the value of $30,030.68, and which logs the receivers took possession of at the time of their appointment, because said master has failed to deduct, from said sum of $30,030.68, $86^9/_{10}$ per cent. of the value of said logs, which $86^9/_{10}$ per cent. of said logs were cut from the lands covered by said deed of trust of May 17, 1889, and is therefore covered by said deed of trust.

"(5) Because the master has reported among the property upon which said judgment creditors of said Southern States Land and Timber Company have a lien certain lumber of the value of $47,924.88, and which lumber the receivers took possession of at the time of their appointment, because said master had failed to deduct, from said sum of $47,924.88, $86^9/_{10}$ per cent. of said lumber, which $86^9/_{10}$ per cent. of said lumber was manufactured from logs cut from lands covered by said deed of trust of May 17, 1889, and is therefore covered by said deed of trust, and is not subject to said lien of said judgment creditors.

"(6) Because the master reports among the property upon which said judgment creditors of said Southern States Land and Timber Company have a lien certain lumber of the value of $30,010.75, and which lumber the said receivers had on hand on the 11th day of June, 1895, because said master has failed to deduct, from said sum of $30,010.75, $86^9/_{10}$ per cent. of the value of said lumber, which $86^9/_{10}$ per cent. of said lumber was manufactured from logs cut from lands covered by said deed of trust of May 17, 1889, and is therefore covered by said deed of trust, and is not subject to said lien of said judgment creditors.

"(7) Said complainants separately except to so much of said master's report as fails to include, in the property covered by said deed of trust of May 17, 1889, $86^9/_{10}$ per cent. of $30,030.68, the value of certain logs which the receivers took possession of at the time of their appointment, and which $86^9/_{10}$ per cent. of said logs were cut from the lands covered by said deed of trust of May 17, 1889, and is therefore covered by said deed of trust.

"(8) Because said master's report fails to include, in the property covered by said deed of trust of May 17, 1889, $86^9/_{10}$ per cent. of $47,924.88, the value of certain lumber which the receivers took possession of at the time of their appointment, and which $86^9/_{10}$ per cent. of said lumber was manufactured from logs cut from the lands covered by said deed of trust of May 17, 1889, and is therefore covered by said deed of trust.

"(9) Because said master fails to find that all the creditors of said Southern States Land and Timber Company, including the holders of the debentures secured by said deed of trust of May 17, 1889, are entitled to share pro rata in the distribution of the property and assets of said company not covered by the deed of trust of May 17, 1889.

"(10) Because said master fails to find that the holders of the debentures secured by said deed of trust of May 17, 1889, are entitled to participate in the property and assets not covered by the deed of trust of May 17, 1889, in the proportion which the whole amount of the debentures and interest thereon, viz. £113,593-16s. bears to the whole indebtedness of said Southern States Land and Timber Company.

"(11) Because said master includes in the description of property upon which

said creditors (who have obtained judgments prior to November 4, 1895) have liens the railroad equipments of the Pensacola and Mobile Railroad Company, a corporation, which railroad and equipments were taken possession of by the receivers in this cause at the time of their appointment. Four hundred and ninety-three shares of the capital stock of said corporation are pledged to secure the payment of the debentures mentioned and described in the deed of trust of May 17, 1889.

"(12) Because the said master has included in the property which he reports as covered by liens in favor of the intervening judgment creditors the following personal property, to wit:

| | | | |
|---|---|---|---|
| 1 locomotive, | 'Baldwin'. | | £5,000 |
| 1 " | 'Shay'. | | 750 |
| 1 " | 'Montour' | | 1,500 |
| 1 " | 'Mooney' | | 3,500 |
| 1 caboose | | | 250 |
| 26 flat cars. | | | 3,250 |
| 4 " " | | | 200 |
| 1 hand car. | | | 15 |
| 1 push car. | | | 6 |

—Although there is no testimony that the said property, or any part thereof, was in Escambia county at the time the executions in favor of said creditors were placed in the hands of the sheriff of Escambia county, Florida, or at any time thereafter.

"(13) Because the testimony of P. K. Yonge (the only testimony on the subject) shows that the said property was not at said time and times in said county."

"(16) Because the said master has included, in the statement made by him of the personal property reported by him to be covered by the lien of the judgment creditors, merchandise, stocks in stores, etc., of the value of $21,888.14, although there was no testimony before the master of the amount or value of said property of the defendant the Southern States Land and Timber Company, Limited, at the date of the placing of the executions issued upon the judgments in favor of the interveners in the hands of the sheriff of Escambia county, Florida, or at any time thereafter."

April 10, 1897, the circuit court passed its decree of foreclosure and sale in customary form, providing, in default of the debtor company's making full payment of specified amounts, the whole of the property should be sold in the manner prescribed by the decree. This decree reserves all questions of priority among the several parties to the suit, and the method or rule of distribution of the funds arising from the sales, and all the questions left open in the decrees on the reports of the special masters, John E. Mitchell and Richard Jones, for a future decree herein. The purpose of this decree is declared to be to direct a sale of the property in the hands of the receivers, and to procure their discharge from the management of the same, and not to prejudice the rights of any of the parties hereto. From this decree of April 10, 1897, and the decree of February 4, 1897, and the decree of July 27, 1896, the complainants were allowed an appeal.

From the decree of the court rendered May 30, 1896, denying the petition of James McDonnell and others leave to file demurrers to parts of the original bill of complaint, and from the decree rendered July 27, 1896, whereby the court overruled the exceptions of interveners to that part of the report of the special master, John E. Mitchell, which finds that the mill machinery at Millview, Fla., is covered by the mortgage described in the original bill of complaint, and from the decree rendered on February 4, 1897, which

sustains additional exceptions filed by the complainants on the 7th of December, 1896, to the report of Special Master Jones, numbered, respectively, 14, 15, 17, 18, 19, 20. and 21, and from the decree rendered on the 10th of April, 1897, whereby the court ordered the property in the hands of the receivers to be sold without providing any means by which the interveners might obtain a credit upon the purchase money of such personal property as they might bid in at such sale by crediting upon their respective judgments such amounts as they might be entitled to receive from the property so purchased, the interveners, as cross appellants, were allowed an appeal.

Numerous errors are assigned by the appellants and by the cross appellants. From the very nature of the case, these exceptions are fragmentary in their character, and more or less related to and dependent on each other. Taken altogether the exceptions of the appellants and of the cross appellants on the whole record, a substantial summary of which, so far as it affects the real issue in the case, we have just made, embrace and present three questions: (1) Did the interveners, by putting their claims in judgment after the filing of the original bill and the seizure of the property by the receivers, acquire an equitable lien or preference against the property of the mortgagor company not covered by the mortgage? (2) Did the mortgage bondholders have a lien on the logs, and sawn lumber made therefrom, that came into the hands of the receivers at the time they took possession or subsequently? (3) How should the assets not subject to the mortgage or to judgment liens be distributed?

We believe that a clear answer to the foregoing questions will enable the circuit court to proceed with the administration of this estate without falling into any substantial error. It is urged that the original bill, brought by a mortgage bondholder who had not put his claim in judgment, and who sued only on his own behalf and on behalf of such other bondholders as should choose to come in and bear part of the expense of the litigation against the mortgagor company and the trustees in the mortgage, did not present such a case as gave the circuit court jurisdiction in equity over the property of the mortgagor company not covered by the mortgage; that the property of the mortgagor company could not be treated as a trust estate subject to administration in equity until the insolvency of the company was declared by decree; that until, either on the prayer of the complainant or on the court's own motion, the court passed a decree calling in all creditors, such creditors could proceed at law in any court of competent jurisdiction to put their claims in judgment against the debtor company, and thereby secure such lien upon the property of the debtor company as is given to judgments by law. It is, however, conceded that as all the property of the debtor corporation was in the custody of the court at the time the judgments at law were rendered, no legal lien could attach to any of the property. But it seems to be insisted that the judgment creditors were prevented from attaining this right by the wrongful act of the circuit court in seiz-

ing the unmortgaged property at the complainants' suit, and that, therefore, these creditors have an equitable right in the property thus seized, equivalent to the legal lien they would otherwise have acquired. If in seizing the unmortgaged property the circuit court went beyond its jurisdiction, the first impression would be that its action in that respect might be disregarded. But experience and more mature reason have taught that this cannot be done without causing greater injury than is likely to be caused by this act of the court. It is clear, as the interveners and the circuit court alike concede, that the judgments of the interveners carry no legal lien against any of the property of the debtor company. It seems to be equally clear and equally conceded that when a court of equity, at the suit of a proper party, has by a decree declared that the corporation is insolvent, and ordered notice to all creditors to present their claims, then it has jurisdiction to administer the corporate estate as a trust fund. But this concession seems to rest the jurisdiction of the unmortgaged property on the action of the court subsequent to the seizure, and not on the facts existing at the time of the seizure, and to give, not to the antecedent fact of insolvency, but to its indefinitely deferred declaration by the court, the force that converts the corporate property into a trust estate fit for equitable administration. On the contrary, the sound doctrine is that "when a corporation becomes insolvent, it is so far civilly dead that its property may be administered as a trust fund for the benefit of its stockholders and creditors. A court of equity, at the instance of the proper parties, will then make those funds trust funds, which in other circumstances is as much the absolute right of the corporation as any man's property is his." This cannot better be done or be better evidenced than by seizing the property; and, when a court does take into its possession the assets of an insolvent corporation, it will administer these assets on the theory that they in equity belong, first, to the creditors; and, if there is more than sufficient to satisfy the creditors, then to the stockholders rather than to the corporation itself. There are degrees of insolvency, and it does not necessarily reach that extremity which excludes stockholders before this jurisdiction in equity supervenes. The chief object and duty of a court of equity in taking possession of an insolvent estate is to preserve it and secure its distribution among the creditors, according to their rights therein at the time of taking it into possession, or (where these are not simultaneous) at the institution of proceedings to that end. The bill in this case clearly shows the insolvency of the corporation to have existed at the time the suit was brought. The filing of the bill and the seizure of the property were substantially simultaneous. The corporation at the same time solemnly admitted that the averments of the bill on this subject, as on all others, are substantially true. We do not understand the interveners as now questioning the fact that the insolvency did exist as charged in the bill. And we think, in such a case as this, no less than in the case of an insolvent banking corporation thus brought into liquidation to be wound up by ju-

dicial process at the suit of a creditor, whether he sues in his own right or on behalf of himself and other creditors, the rule of distribution is the same. It is founded upon the principle of equality, in which equity delights; and unless a claimant had, previously to the filing of the bill, obtained a lien at law upon some portion of the property to be distributed, or could establish a superior equity existing at the time of the filing of the bill, he should not be allowed a preference. The question at issue is not the right of the creditor to sue and obtain judgment against the corporation not yet dissolved, but the question relates wholly to the rights of creditors in the estate which the court of equity has seized and is proceeding to administer. And the same reasons, or reasons equally strong as those which have settled the question that a judgment subsequently acquired in another court, or in the same court in another suit, does not create a legal lien on any of the property being administered, exclude the holder from acquiring thereby an equitable lien or right of preference in the assets. There are always, to a greater or less extent, certain claims against such an estate, having sometimes a legal lien, and often only an equitable right of such a high character that the court of administration will not defer their payment until the full administration of the estate, but will require their prompt payment, even if it becomes necessary to expose a portion of the property to sale for that purpose before a final hearing is reached. Of such claims are public taxes, and unpaid charges for labor and material, and the necessary supplies furnished for the preservation or operation of the estate within a reasonable time next before its seizure by the court of equity. The court will, in whatever way may appear best, protect itself, and parties having a bona fide interest, against collusion and fraud, whenever it may appear in the conduct of the parties to the suit. No such vice is even suggested to affect the institution and progress of this suit. We believe it has been the uniform practice in this circuit for more than 20 years, in conducting administrations of this kind, to recognize the liens as they existed at the institution of the suit. It would, in our opinion, impede and embarrass the proceedings of such an administration, discredit the court, and do despite to the rule of equality in which equity delights, to suffer such a claim for preference as is made by the interveners here to prevail. We therefore hold that the interveners did not, by putting their claims in judgment, acquire any better right than they had at the institution of this suit. We believe that this holding is in accordance with all the more recent and better considered of the adjudged cases bearing on the questions involved. Hollins v. Iron Co., 150 U. S. 371, 14 Sup. Ct. 127; Richmond v. Irons, 121 U. S. 27, 7 Sup. Ct. 788, and the cases therein cited.

In regard to the second question, we concur with the learned judge of the circuit court that, "by the terms of the mortgage, the defendant had a right 'to enjoy the mortgaged premises, and to receive the profits thereof, and to let, deal with, and manage the same in the ordinary course of business,' which was to cut and re-

86 F.—46

move the logs for the mills, to manufacture lumber from them, and to pledge or sell that lumber. The purchaser of such lumber acquired a good title to it. The title to the logs from which the lumber was made must then have been in the corporation to enable it to so use and deal with them, and, in the exercise of its right or claim of right to do this, an injunction to prevent waste could not have been maintained against it."

Touching the third question, it is to be observed that, under the ninety-second and the eighth of the equity rules, the complainants in this case will be entitled to a decree for any balance that may be found to be due them, "over and above the proceeds of sales" of the property on which their mortgage has been foreclosed, and to have execution issue thereon in the form used in the circuit court in suits at common law in actions of assumpsit. Therefore, as to any unsatisfied balance that may remain due the complainants, after the appropriation to their demand of the proceeds of the property upon which they have foreclosed their mortgage, they are on a par with other general creditors who are or may become parties to this proceeding. Such fund, then, as shall be ascertained to exist free from the lien of the complainants' mortgage or other lien that may be found to have existed at the institution of the suit, must be divided pro rata among all the creditors who establish their claims, including the complainants, to the extent of the balance of their debt, if any, remaining unsatisfied after the appropriation thereto of the proceeds of the mortgaged property.

The decrees of July 27, 1896, and February 4, 1897, are hereby reversed, so far as they conflict with the views expressed in this opinion; all the other decrees appealed from are affirmed; and the cause is remanded to the circuit court, with instructions to so amend and modify the decrees of July 27, 1896, and February 4, 1897, as to make them conform to the views herein expressed, and to otherwise proceed in the case as equity may require; the costs of this court, including cost of transcript, to be equally divided between the appellants and the cross appellants.