## In re LAUGHLIN. *
### Patent Appeal No. 2684.

Court of Customs and Patent Appeals.
April 22, 1931.

*Rehearing denied June 5, 1931.

Joshua R. H. Potts, of Chicago, Ill. (Eugene Vincent Clarke, Basel H. Brune, and Howard S. Laughlin, all of Chicago, Ill., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

Laughlin appealed from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the Examiner denying seven claims, numbered 12 to 18, inclusive, being all the claims of the application, for a "method of hardening the surfaces of steel castings."

We quote Nos. 12, 13, and 17, as being fairly representative:

"12. The method of treating metallic castings or the like comprising the steps of first heating the casting to a tempering temperature, then substantially, uniformly and simultaneously subjecting the surface thereof to be treated to a quenching fluid for a few seconds, then removing the casting from the quenching fluid to permit the treated surface to reheat to approximately a tempering temperature by conduction from the unaffected portion of said casting, and then again quenching said casting.

"13. The method of treating metallic castings or the like comprising the steps of first heating the casting to a tempering temperature, then substantially, uniformly and simultaneously subjecting the surface thereof to be treated to a quenching fluid for from three to six seconds, then removing the casting from the quenching fluid to permit the treated surface to reheat by conduction from the unaffected portion of said casting for about ten seconds, and then again quenching said casting."

"17. The method of treating the surfaces of steel objects of low carbon content comprising the steps of first heating the object to a temperature from 1600° to 2200° F. inversely as to the carbon content, then immersing said object in a quenching fluid un-

til the surfaces of the same are chilled to the desired depth, but leaving the interior substantially unaffected, then removing the object from quench to permit the surface thereof to reheat by conduction to approximately 200° F. below the temperature at the first quench, and then requenching the object to cool the same."

As references there are cited: Pease et al., 1276106, August 20, 1918; Schaffer, 1362147, December 14, 1920; Laughlin, 1527418, February 24, 1925.

There are nineteen assignments of error; a number of them being merely formal.

It will be observed that one of the references is for a patent to appellant himself. This was for a method and an apparatus limited to hardening the surfaces of car wheels, granted July 28, 1923, and will be later more specifically analyzed.

The claims here at issue involve only the process; no apparatus being disclosed or claimed.

The tribunals of the Patent Office held that the grant of the instant application would, as the Board expresses it, "give appellant a second patent for his invention and prolong the term of his monopoly"; it being the opinion there was no patentable difference in the subject-matter of the claims of the application and that of the patent claims, in view of the prior art as revealed by Pease et al.

The present application was filed November 9, 1921, and contained seven claims, for which, during the course of the proceedings, the claims at issue were finally substituted by amendment. This substitution was on February 8, 1928, and was accompanied by a supplemental oath of appellant.

It is stated in the brief for appellant that, after the application here involved had been on file for about a year and eight months, he "discovered that car wheels could be effectually tempered and treated by an entirely different process, necessitating the employment of an especially designed apparatus," and consequently on July 28, 1923, he filed an application directed to both "method and apparatus for hardening the surfaces of car wheels." This application eventuated in the patent, No. 1,527,418, of February 14, 1925, above referred to, and which is cited as a reference against the instant application.

The process claims of this Laughlin patent are Nos. 1 and 2, respectively. It is sufficient to quote No. 1:

"1. The method of hardening the surfaces of car wheels which consists in first heating the same, then substantially uniformly and simultaneously quenching the entire tread surfaces of the wheel for a short time; then discontinuing the quenching for a sufficient length of time to permit said surfaces to reheat by conduction from the interior of the wheel; and then finally and completely quenching the same, substantially as described."

It will be observed that the claims of the patent do not provide for the quenching of the entire wheel surface, but are limited to the "entire *tread* surfaces of the wheels." (Italics ours.)

It will be observed also that no definite time is fixed for the first quenching operation. Both claims state, "for a short time." The specifications say:

"This supply of water [used in the quenchings] is continued for a short period only usually from 15 to 30 seconds depending upon the depth of hardness desired in the tread portions of the wheel."

It is the insistence of appellant that in the method of the involved application the initial quenching step relates to the *entire* surface of the castings, and we take this to be the correct construction of the language, because of the wording of the explanations of the process, although neither the claims nor the specifications use the word "entire."

It is also insisted in the brief for appellant that in the application the initial quenching step is "for a short time 'usually from three to six seconds. * * * '"

We find by examining the claims that only two of them, Nos. 13 and 15, use the expression, "from three to six seconds." Nos. 12 and 14 say "for a few seconds," and Nos. 16, 17, and 18 say "until the surfaces of the same are chilled to the desired depth."

The patent of appellant on the car wheel device seems to have been by him assigned or sold to American Steel Foundries. The original application, here involved in its amended form, was still pending in the Patent Office, and, at some period during its pendency there, the exact date not being disclosed by the record, American Steel Foundries brought a proceeding in equity in the District Court of the United States for the Eastern Division of the Northern District of Illinois, in which it sought to compel the assignment to it of the pending application, claiming its right thereto by virtue of the car wheel device assignment. From the final

decree of the United States District Court in that case, we assume that Laughlin was, for a time, enjoined from prosecuting his application, now at issue here. American Steel Foundries also apparently sought in that proceeding a decree requiring Laughlin to file an application for reissue of his car wheel patent, and include in the reissue application the subject-matter of his then pending, and now here involved, application.

The United States District Court denied the plaintiff, American Steel Foundries, any part of the relief sought and dismissed the bill. American Steel Foundries v. Laughlin, 30 F.(2d) 137. Its decree was affirmed, December 27, 1928, by the Circuit Court of Appeals of the Seventh Circuit, in an opinion by Circuit Judge Evans, reported in 30 F. (2d) 139.

It is unnecessary to consider, in this proceeding, all the issues and adjudications thereon in the American Steel Foundries Case, supra.

Appellant here insists that the decisions of those courts constituted a finding that the claims of the application were not for the same invention as the claims of the patent, and that (we presume under the doctrine of stare decisis) this court should be bound by that holding. There is no claim of res adjudicata, and we think could be none.

This court, as of course, would be bound by an adjudication upon an issue which was inherent in those proceedings and which it was necessary for those courts to decide, if the issue and the parties were the same. But, in the statement by them that the claims were not the same, there was no adjudication of patentability, so far as we can determine from the record. There was no occasion for those courts to determine that question, and we do not understand that they attempted or proposed to pass upon it.

That question is before us in the regular and usual way and must be determined by us.

At one time, that is, July 20, 1926, three of the claims, as then formulated, were definitely stated by the Examiner to be allowable. Those three, as given in appellant's brief, seem to correspond quite closely in their subject-matter to his present claim 17, quoted supra, and, in part, to present claim 16.

The claims, in which the degrees of temperature to which the objects are to be heated were first specifically stated, seem to have been injected into the application October 15, 1925, together with an amendment of the description. This appears to have been done in response to a suggestion or requirement of the Examiner "that the applicant should set forth in detail, the *approximate temperature* to which the surface is allowed to reheat. * * * *" (Italics quoted.) The three claims which, for a time, stood allowed, embraced this feature. Subsequently the Examiner, on August 26, 1926, withdrew the allowance and rejected them, along with the others, as constituting double patenting over appellant's car wheel patent.

In the end their subject-matter, as claims 16 and 17, was rejected, not only upon the ground of double patenting, but because not disclosed in the original or first application as it read at the time of its filing.

The prior art shown in the references, other than the Laughlin reference, is:

Schaffer shows a method and apparatus relating to the hardening of manganese steel articles. It was cited by the Examiner at an early period but is not referred to by the Board of Appeals. We do not regard it as being in point.

The Pease et al. patent was cited as showing that it was old in the art "to harden the tread surface of car wheels by quenching," and the Board says:

"Consequently, any novelty in the method claims of appellant's patent must reside in the *steps* of the method. * * * *" (Italics ours.)

This, we think, is correct, and, since the steps of the Laughlin patent, and of his application here involved, differ from the steps of Pease et al., the latter is not a reference as to appellant's step phase.

The issue before us is accordingly narrowed to the question of whether the application should be denied upon the Laughlin patent, because double patenting of the process will result from granting it.

After thorough consideration, it is our conclusion that, upon both reason and authority, the application must be rejected upon this ground.

What is appellant's invention? What was his concept? It was that of a process to accomplish a desired end by the taking of certain steps; that end being the tempering of the surfaces of certain metal articles to a greater degree of hardness than the interior, so that, in the article, there would be wrought desirable variations in strength, or tensility, or other characteristics. The steps to accomplish this which appellant conceived

were: (a) Heating the entire article to a degree of temperature well known in the art; (b) quenching the article for a time so brief as that the lowering of the heat extends to only a limited depth; (c) permitting the quenched surface to reheat from the unquenched interior to a degree also known in the art; and (d) again quenching, this time, the entire object.

That is the method as applied to the tread surfaces of the car wheels in the patent; that is the method, in no particular changed (except, perhaps, by the manner of its application called for—that is, the apparatus), to be applied to the entire surfaces of metal castings in the claims at issue here.

Appellant's counsel insists with great earnestness that the inventions are different. We are unable to see wherein the *methods* differ. They are applied to different objects, but the methods remain the same, except, perhaps, as differences of degrees in temperature may be required, according to the nature of the metals, and variations necessary in the depth of the initial quench, because of the difference in the character of the objects that are to be made. These exceptions are known to those skilled in the art.

It is true that the car wheel or patent claims call for the initial quenching of only the tread portion of the surface, while the claims of the application may be construed as applying the initial quench to the entire surface, but the method or process is, in all respects, the same. The method, we think, must be considered by itself; that is, it is not to be measured simply by the individual objects to which applied. Had appellant secured the allowance of the application now at issue before the granting of the patent which he did obtain, we are unable to see how the method claims of the latter could have been allowed, or, if allowed, how held valid. The reverse of this seems equally true, since, in both instances, the steps of the method are in all material respects identical.

In re Woodsome et al., 56 App. D. C. 138, 10 F.(2d) 1003, is cited by the Solicitor for the Patent Office, and is in point.

There an original application contained numerous claims. Certain of these were specific in character and others generic. A division was required by the Examiner between the two classes of claims. The applicants did not appeal from this requirement, but canceled the broad claims, and the case went to issue on the narrow ones. A patent was granted, but before its issuance the applicants filed, as a divisional proceeding, an application containing the broad claims theretofore canceled. This application was denied by the Patent Office, and upon appeal to the Court of Appeals of the District of Columbia the decision of the final Patent Office tribunal was affirmed, the court saying:

"We agree with the lower tribunals that there was but a single inventive idea, and that it was embodied in a single structure, and accordingly that the applicants are not entitled to extend the period of their patent upon the invention on the ground of a mere difference in the scope of the claims contained in the two applications. Fassett v. Ewart Mfg. Co., 62 F. 404, 10 C. C. A. 441; Otis Elevator Co. v. Portland Co., 127 F. 557, 62 C. C. A. 339; Union Typewriter Co. v. L. C. Smith & Bros. Typewriter Co. (C. C.) 173 F. 288; Morse Chain Co. v. Link Belt Machinery Co., 164 F. 333, 90 C. C. A. 650; Gold v. Gold, 187 F. 273, 109 C. C. A. 615."

In the case at bar the claims, in their essence, do not differ from the patent claims. It is only in the objects to which the method is applied that the difference is found.

In the Woodsome Case, supra, the court said: " * * * The disclosure of the two applications is identical, both as to drawings and descriptions."

In the instant case, there are no drawings, of course, but, in all features that might constitute invention in the method, the disclosures have exactly the same purport and meaning.

The case of In re Hutter, 55 App. D. C. 210, 4 F.(2d) 176, is also cited by the Solicitor for the Patent Office. We are inclined to agree with counsel for appellant that the Hutter Case is probably distinguishable from the one at bar. Of course, the facts of the Woodsome Case, supra, differ somewhat from the case before us, but we see no distinction in the principles of the two.

The numerous authorities cited, and in several instances quoted from, by counsel for appellant, have been carefully scrutinized and considered, such as Thomson-Houston Electric Co. v. Ohio Brass Co. (C. C. A.) 80 F. 712, 724; Wirebounds Patents Co. v. Saranac (C. C. A.) 37 F.(2d) 830; Thomson-Houston Electric Co. v. Elmira (C. C. A.) 71 F. 396; Southern Textile Machinery Co. v. United Hosiery Mills (C. C. A.) 33 F.(2d) 862; and many others, with their contained references.

In no one of these do we find anything inconsistent with our position as stated here.

The case of Thomson-Houston Electric

Co. v. Ohio Brass Co., supra, is particularly stressed by appellant's counsel, as supporting his position in this case. The opinion there was by the late Chief Justice Taft, who then was a United States Circuit Judge, and sitting with him in the hearing, and concurring with him in the opinion, were United States Circuit Judge Lurton and United States District Judge Clark, both of whom later became Associate Justices of the United States Supreme Court. Certainly an opinion coming from so distinguished a tribunal may be taken as a most positive announcement of law, but it must be taken as a whole, and detached phrases or sentences may not be accepted as fully disclosing the doctrine there announced. Also we must know the state of facts upon which the doctrine was pronounced. The suit was an infringement proceeding, and one of the defenses was "that the patents relied on are void because the inventions covered by them were patented in prior patents to the same patentee."

The involved patents were for a mechanism, not for a process.

In the application for the patent which was first issued, the applicants expressly stated that it was for an improvement on certain parts of the application then pending and which later became the second patent. The court said:

"An examination of the drawings and specifications leaves no doubt that this statement is true. * *. * The claims, all of them, include and refer to one or the other of these improvements. Now, it is not material to this discussion whether these improvements are patentable or not. They are expressly claimed as improvements, and no attempt is made by the patentee to cover anything but them. If inventions at all, then they are separable from the old switch and trolley combinations, and, if they are not inventions, the patents are void, and cover nothing. * * *"

After stating that the law had become well settled that "a patent may issue for an improvement on an earlier invention either to the original inventor or to a stranger," the court continued:

" * * * But it is said that if, by some chance, the application for the fundamental patent is delayed in its course through the patent office until a patent on the *avowed*

*improvement* has issued, then the patent on the fundamental invention is void." (Italics ours.)

The court held that such was not the law, but the facts of the instant case do not square with the facts of that case.

It was not an improvement over his original application which appellant claimed for the *method* of his patent. It was the same method applied to a different, or at least to a specific, object. The claims of his application are no more generic than are the claims of his patent. They differ only in the objects of their application.

Therein, it seems to us, lies the great and decisive distinction, which renders what was held in the case from which we have quoted inapplicable to the case at bar.

Appellant's method invention lies in the steps described. These steps, in their patentable aspects, are the same whether applied in the tempering of only the tread surfaces of car wheels or in the tempering of the entire surfaces of metallic or steel castings. The one inventive idea was disclosed in the patent as fully, except in details not patentable, as it was, or is, in the application.

It is not deemed necessary to lengthen this already long opinion by attempting an analysis of the other cases cited by appellant. Each of them, we feel sure, is distinguishable in its facts from the case at bar.

Under the view we hold, there is no necessity of our passing upon the question of whether claims 16 and 17 were properly rejected on the ground of insufficient disclosure. Since they were inserted by an amendment which appears to have been, at least, invited, if not required, by the Examiner, we should certainly feel disposed to go as far as we might, under the law, in upholding them, so far as that particular ground is concerned.

We do not, however, regard those features of them which differ from the features of the other claims as presenting patentable matter. All the claims are subject to the objection that to grant them would result in double patenting, or a second patent for precisely the same principle of the first in no way claimed to be improved or altered in any patentable regard.

The decision of the Board of Appeals is affirmed.

Affirmed.