OTIS ELEVATOR CO. v. PORTLAND CO.

(Circuit Court of Appeals, First Circuit. December 1, 1903.)

No. 474.

**1. PATENTS—VALIDITY—DOUBLE PATENTING.**
    Two patents may be for the same invention, although the earlier is for a specific machine, while the later contains broader claims, which embrace both the prior specific machine, and others as well.
**2. SAME—EFFECT OF DISCLAIMER.**
    A patentee cannot patent a structure, and by a disclaimer withdraw the invention which makes the structure patentable.
**3. SAME—ELEVATOR-CONTROLLING MECHANISM.**
    The Bassett patent, No. 453,955, for an elevator-controlling mechanism, claims 1 and 2, if given the broad construction claimed by the patentee, as covering all controlling devices in which a single cable-operating device

operates simultaneously upon two cable-sections to pay out one while the other is taken up, is void for double patenting; that being an inherent feature of the device of the prior patent, No. 359,551, to the same patentee.

Appeal from the Circuit Court of the United States for the District of Maine.

For opinion below, see 119 Fed. 928

Edwin H. Brown, for appellant.

Edward P. Payson, for appellee.

Before COLT, Circuit Judge, and ALDRICH and BROWN, District Judges.

BROWN, District Judge. This suit is for infringement of claims 1 and 2 of letters patent No. 453,955, dated June 9, 1891, to Norman C. Bassett, assignor to the Hydraulic Elevator Company. The opinion of the Circuit Court is reported in 119 Fed. 928. The patent relates to means for actuating the stopping and starting or controlling mechanism of an elevator from the traveling cage. The claims are as follows:

"(1) A device for operating the stopping and starting mechanisms of an elevator, consisting of two cables or cable-sections hanging in the well adjacent to the path of the cage from fixed supports at the upper ends and both connected with the stopping and starting mechanism, and a single cable-operating device carried by the cage. and arranged to bear upon both cables or cable-sections to tighten or slacken the same alternately to shift said mechanism to its different positions, substantially as set forth.

"(2) In controlling devices for elevators, the combination of a car, two fixed or standing cable-sections, each connected with a fixed support at one end and the other with the starting and stopping mechanism, a cable-operating device on the car bearing on both cables and over which said cables pass, and means for moving said device to alternately take up and pay out the cables to shift the operating mechanism, substantially as described."

The complainant contends that the essential feature of the invention is "a single cable-operating device, bearing upon two cables simultaneously, so as to operate upon them simultaneously, with the result of exercising positive control over them at all times and under all, conditions," and that the combination is such that the stopping and starting device will never at any time be free from the influence of the cable-operating device. When the cable-operating device is in its mid position, it will deflect both cables to the same extent, and hold the starting and stopping device in the mid position. The car will then be held securely at rest. The movement of the cable-operating device in one direction or the other, away from its mid position, will draw up the lower portion of one of the cables to a greater extent, and correspondingly relax or let out the other. Both cables are always deflected. As both cables will thus at all times be under the influence of a single handle, one will constitute the holdback to the pulling action of the other, and so prevent any dangerous or undesirable motion being imparted to the starting or stopping device by momentum or other cause.

An earlier patent to Bassett, No. 359,551, applied for March 5, 1885, and granted March 15, 1887, is for a structure which, in these particulars, exactly resembles the structures described in the patent in suit. It is relied upon by the complainant as full proof that Bassett made the invention of claims 1 and 2 of the patent in suit as early as March

5, 1885, thereby antedating patents to Stokes, No. 469,984, to Prince, No. 335,239, to Perkins, No. 349,175, and to Baldwin, No. 390,053, which prima facie anticipate the patent in suit.

But, if the earlier patent be accepted as such proof, it seems to follow that claims 1 and 2 in suit, if construed to cover all controlling devices in which a single cable-operating device operates simultaneously upon two cable-sections in the manner above described, are void.

In the patent in suit, Bassett makes reference to the structure of the earlier patent, "the same being one species under the invention herein claimed, and differing practically from the construction herein shown, in the liability of the cables to slip on one or other of the double-grooved pulleys, thereby causing a wear that is avoided when each pulley can turn independently."

But this feature of means for avoiding friction shown in the structure of the patent in suit is made nonessential if claims 1 and 2 are to be construed as generic, and if the earlier patent, as the complainant contends, shows a structure which completely embodies the generic invention.

The complainant's argument requires us to find a substantial resemblance between the defendant's machine, the invention claimed in claims 1 and 2 of the patent in suit, and the structure of the earlier Bassett patent. Claims 1 and 2 admittedly cover the structure of the earlier patent. To avoid the objection of double patenting, it is not enough to show that the prior patent claims a specific machine, and that the later patent contains broader claims, which embrace both the prior specific machine and other machines as well. Two patents may be regarded as for the same invention, though one claims only a special machine, and the other claims broadly a genus which includes the former. Miller v. Eagle Mfg. Co., 151 U. S. 186, 198, 14 Sup. Ct. 310, 38 L. Ed. 121; Robinson on Patents, §§ 464, 465, vol. 2, p. 45.

Upon a comparison of these patents, adopting for such comparison the complainant's construction of claims 1 and 2, we are of the opinion that the feature of simultaneous control is as inherent in the structure of the earlier patent as in that of the patent in suit; and we think there is no escape from the defendant's contention that, if we must read into claims 1 and 2 this feature of simultaneous control, which is inherent in the structure, we must consistently construe the claims of the earlier patent in the same way.

The important proposition on the complainant's brief is as follows:

"The claims of patent 359,551 are not claims predicated upon Bassett's primary generic invention. They are predicated upon the fact that he made the species invention as well as the primary generic invention, that species invention being characterized by double-grooved pulleys."

We think this is erroneous. The first patent describes and claims a machine, and what it embodies. It neither describes nor claims any invention as a thing apart from, or additional to, or dependent upon, a generic invention. It is very clear, both from the history of the application and from the earlier patent itself, that Bassett intended to patent this structure as a machine containing, as an improvement on the prior art, the feature of ropes passed in opposite directions about a pair of pulleys, and controlled by a single hand device. He says:

"I am aware that two suspended ropes connected to a valve device have been used in connection with two pairs of sheaves or pulleys, each pair on bearings that may be vibrated from within the cage. My invention differs from this in passing both ropes in opposite directions around one pair of pulleys."

He testifies, moreover, that, at the time of his application for the earlier patent, he considered the form of device shown in figures 1 and 2 of patent No. 359,551 "as the simplest form, and the one most likely to go into commercial use, and therefore the form on which we should apply for patent first; it being the intention to apply for detail patents on the other forms later."

The only difference between the structure of the earlier patent and that of the patent in suit is that in the earlier there were two double-grooved pulleys, one at each end of the arm, while in the structure of the patent in suit there are substituted for each double-grooved pulley two single-grooved pulleys, independently rotatable. The arrangement of the ropes, the number of grooves for the ropes, the general mode of operation, are not changed. The complainant has produced working models to show identity of operation between two double-grooved pulleys and four single-grooved pulleys, so far as the feature of simultaneous control of the cable sections is concerned.

If the invention of "simultaneous control" is of a primary character, and is fully proved by the earlier patent—if Bassett was a pioneer because he provided a new way of operating cables—the claims of his earlier patent would be entitled to a broad construction, and could not be evaded by the substitution of four single-grooved pulleys for two double-grooved pulleys, though friction might be avoided.

We do not think that it is correct to say that the earlier patent is for a species invention characterized by double-grooved pulleys. The earlier patent is not a patent for an improvement in means for applying a generic idea. It does not describe or claim such invention as resides in using two double-grooved pulleys instead of four single-grooved pulleys. It is not contended that this in itself was either a useful or patentable feature. If it is true that Bassett first devised a six-pulley device, then simplified it to four pulleys, and then still further simplified it to two double-grooved pulleys, this last step was a retrograde, for, while this simplification retained the so-called generic invention, it omitted the valuable antifriction feature involved in the use of independently rotatable pulleys.

Whether Bassett had in fact invented a practical elevator control mechanism at the date of his application for the prior patent, and whether independently rotatable pulleys are not essential to a practical invention, seems to be doubtful. Unless his earlier patent be accepted as sufficient proof of the date of a practical invention, the other evidence seems insufficient to overcome the prima facie anticipation by Stokes, Prince, Perkins, and Baldwin.

It is sufficient, however, for the purposes of this case, that we accept part of the complainant's contention, and assume, without deciding, that the earlier patent is such complete proof of the generic invention as to avoid anticipation by Stokes, Prince, Perkins, and Baldwin, and that claims 1 and 2 of the patent in suit should be so

construed as to include the feature of simultaneous control, and thus avoid anticipation by Whitlock, No. 159,613. This leaves for consideration only the defense that claims 1 and 2 of the patent in suit, construed as the complainant would construe them, are void for double patenting.

While the complainant admits that the claims in suit cover the prior machine, and contends that the use in that machine of two double-grooved pulleys does not alter the fact that the machine embodies the feature of simultaneous control of the cable-sections as fully as does the structure of the patent in suit, counsel argue, in effect, that this "generic" feature should be read into the claims of the patent in suit, but not into the claims of the prior patent. This, we think, is inconsistent.

Is patent No. 359,551 for the same invention covered by claims 1 and 2, as construed by complainant?

If an infringer had made the structure of the first patent, he might have been sued upon that patent, which was issued March 15, 1887, and also upon claims 1 and 2 of the patent in suit, which was issued June 9, 1891. The latter suit would rest, not upon the feature of single-grooved pulleys shown in the drawings of the patent in suit, and made nonessential by claims 1 and 2, but upon simultaneous control of two cable-sections by a single device bearing upon both—the substantial subject-matter of the prior patent.

We are of the opinion that, if we accept the complainant's contention as to the importance and primary character of "simultaneous control," it would be regarded as the substantial invention disclosed in the earlier patent, and that the introduction of the additional antifriction function, resulting from the use of single-grooved, separately rotatable pulleys, would not alter the fact that, so far as simultaneous control is concerned, the rotatable pulleys were a mere equivalent for double-grooved pulleys.

If, however, it should be held that in the earlier patent Bassett had made claims narrower than his generic invention, and had claimed the use of this generic feature only in connection with double-grooved pulleys, we should still be forced to the conclusion that Bassett had not made a claim for the use of double-grooved pulleys as an improvement, but for a machine having two characteristics: First, simultaneous control of two cable sections; second, the use of double-grooved pulleys as a means to that end. In procuring his earlier patent, he has used his "generic" feature as much as he has used his double-grooved pulleys. The patentee cannot subsequently start afresh and say: "I have now another machine, which is exactly like the old one in the use of the generic idea. I desire a patent upon it, but I do not claim the feature in which the machine of my new application differs from the old, but I claim what is exactly the same as is in the old. I claim that machine again, and all others containing the same invention." Yet this is substantially the case before us.

Counsel say that Bassett's application for the patent in suit is based upon the mechanism which he first invented. If this were strictly so— if his claims were in fact limited to this mechanism—no question of double patenting would arise. His claims are not, properly speaking,

based upon his mechanism, but on the contention that when he made that mechanism he also originated a generic idea of elevator control, capable of many applications. Grant this, for the argument. He was at liberty to patent that mechanism, and to base upon what it disclosed generic claims. He did not do this. He sought other mechanisms for the better embodiment of his idea. He made a machine which was a perfect embodiment of his generic idea, and which he thought a better mechanism. He applied for a patent on this machine, knowing it to be a full embodiment of his generic idea, and erroneously thinking it better as a practical mechanism. He did not patent an improvement upon his old mechanism. Surely, under such circumstances, he cannot now invalidate or limit his prior patent by producing his first mechanism, and showing that, save double-grooved pulleys, all that he had claimed in his first patent had previously been invented by himself.

The suggestion that Bassett's second patent is based upon his first invented mechanism seems to imply an argument that Bassett is entitled to show that the feature of crossed ropes, first disclosed by him in his earlier patent, and referred to to distinguish that invention from devices of the prior art, was in fact old, being contained in the device which Bassett had not seen fit to present to the Patent Office as the best form of his invention. The earlier patent cannot be thus limited. Bassett, in taking out his first patent, relied upon the main feature of crossed ropes. He took this out of his first-made mechanism, and made it the patentable feature of his supposed best form. Assuming that he might subsequently patent his first four-pulley mechanism, he could not then contend that it was patentable merely because of the feature of crossed ropes and simultaneous control thereof.

Bassett did not, in his first patent, reserve what he now terms his generic invention. By patenting a specific machine as an embodiment of his generic invention, and not because of any distinct invention involved in specific and patentable features, he patented the subject-matter of the claims of the patent in suit. By claiming the machine, he claimed what was in it invented by him. He did not claim the narrow invention, if it was an invention, of simplifying his own undisclosed and undescribed four-pulley machine by substituting two double-grooved pulleys for four single-grooved pulleys. A mere reading of the first patent precludes this construction of the claims.

The complainant relies upon the disclaimer of the earlier patent: "I do not here claim any of the features also shown and claimed in my application serial Nos. 157,771, 158,462, and 216,962."

Though reference is here made to the application for the patent in suit, it is evident that a patentee cannot thus withdraw the invention which actually is embodied in the structure claimed. He cannot patent the structure, and by disclaimer withdraw the invention which makes the structure patentable. Robinson on Patents, vol. 2, § 465, p. 45, notes; Miller v. Eagle Co., 151 U. S. 186, 192, 201, 14 Sup. Ct. 310, 38 L. Ed. 121; Palmer Pneumatic Tire Co. v. Lozier, 90 Fed. 745, 33 C. C. A. 255.

The complainant cites cases to the effect that, by describing an invention in an earlier patent, an inventor does not necessarily preclude himself from subsequently patenting it; also cases to the effect

that a patent describing a primary invention, but with claims limited to subordinate improvements, does not conflict with a patent with broad claims. But these cases are not in point. Conceding that one patent might have issued for the double-grooved pulley mechanism, and another for the single-grooved pulley device, the second could be based only upon the difference in mechanism. But if, as the complainant contends, this difference is immaterial, and the claims in suit cover only what was in the prior patented machine, how can it be said that the two patents do not claim the same subject-matter—the same invention?

Because he is said to have provided a new way of operating cables, the complainant invokes for Bassett a liberal construction of his patent; citing Morley S. M. Co. v. Lancaster, 129 U. S. 263, 9 Sup. Ct. 299, 32 L. Ed. 715; Consolidated Co. v. Valve Co., 113 U. S. 157, 178, 5 Sup. Ct. 513, 28 L. Ed. 939; Hobbs v. Beach, 180 U. S. 383, 399, 21 Sup. Ct. 409, 45 L. Ed. 586. But this rule is applicable to the prior patent as well as to the patent in suit, and would result in giving to Bassett, under his earlier patent, a broad range of equivalents, so that his invention would be practically secured thereby.

Had the present defendant been sued upon Bassett's first patent, and if it be true that that patent discloses a perfected invention of primary character, the defendant doubtless would have infringed that patent, though it did not use a single pair of double-grooved pulleys.

In thus discussing the question of double patenting, we do not decide that Bassett's first patent did disclose a practical and operative machine, or that it is true that Bassett did in fact invent a single-grooved pulley mechanism before the mechanism of the earlier patent. We base our decision upon the conclusion that, if we accept the complainant's construction of claims 1 and 2 of the Bassett patent in suit, No. 453,955, and hold that they cover not only alternate action, but simultaneous action as well, the claims are void by reason of Bassett's earlier patent, No. 359,551.

The decision of the Circuit Court is affirmed, and the appellee will recover costs in this court.