## MORSE CHAIN CO. v. LINK BELT MACHINERY CO.

(Circuit Court of Appeals, Seventh Circuit. April 14, 1908. Rehearing De· nied May 22, 1908.)

### Nos. 1,431, 1,432.

PATENTS—INFRINGEMENT—DRIVE CHAINS.

The Morse patents, No. 736,999 and No. 757,762, for improvements in chain driving gear and drive chains, construed, and *held* not infringed.

Appeal from the Circuit Court of the United States for the East-- ern Division of the Northern District of Illinois.

These are separate appeals, the one being from a decree dismissing for want of equity a bill to enjoin appellee from infringing letters patent No. 757,762, granted to the Morse Chain Company, assignee of Everett F. Morse, April 19th, 1904, for improvement in drive chains—the finding of the bill being that appellee did not infringe the patent in suit; and the other being from a decree dismissing for want of equity a bill to restrain appellee from infringing letters patent No. 736,999, granted to the Morse Chain Company, assignee of Everett F. Morse, August 25th, 1903, for improvements in chain driving gear, the finding of this decree also being that appellee had not infringed.

The following are the claims relied upon in the suit upon patent No. 757,-762:

"1. A drive-chain having its links composed of a plurality of plates, the plates of each link being interspersed upon the pintles with the plates of the adjacent links, and pintles formed in separate parts, of which one part engages with the plates of one link only and bears upon the other part of the pintle.

"2. A drive-chain having each link composed of a plurality of plates, the plates of each link being interspersed upon the pintles with the plates of the adjacent links, and pintles formed in separate parts adapted to turn one upon the other, the apertures in said plates through which both parts of the pintles pass being made to hold in place one part of each pintle and to allow free movement or clearance of the other part thereof."

"9. A drive-chain having adjacent links composed of a plurality of plates adapted to arch over the sprocket-teeth, the plates of each link being interspersed upon the pintles with the plates of the adjacent links, and pintles formed in two parts, of which one part engaged with the plates of one link only and passes freely through openings in the plates of the adjacent link, and the other part engages with the plates of said adjacent link and passes freely through openings in the plates of the first-mentioned link.

"10. A drive-chain having adjacent links composed of a plurality of plates adapted to arch over the sprocket-teeth, the plates of each link being interspersed upon the pintles with the plates of the adjacent links, and pintles formed in separate parts which bear upon each other throughout substantially the full width of the chain, one part of the pintle engaging with the plates of one link only and passing freely through openings in the plates of the ad-- jacent links.

"11. A drive-chain having each link composed of a plurality of plates interspersed upon the pintles with the plates of the adjacent links, and pintles formed in separate parts extending substantially the full width of the chain, and adapted to turn one upon another, the apertures in said plates being made to rigidly hold one part of each pintle and to allow free movement of the other part thereof."

The following are the claims relied upon in the suit upon patent No. 736,-999:

"1. In a rocker-joint for chains or other devices, the combination with one of the hinged parts provided with an aperture and having a bearing-sur-face, of the other hinged part also provided with an aperture, and having a

bearing-surface and a member having a double rocking-surface located in said apertures between said bearing-surfaces and adapted to rock on either of them.

"2. In a rocker-joint for chains or other devices, the combination of one of the hinged parts having an aperture therein and provided with a bearing-surface, of a pintle passing through said aperture and having a bearing-surface, and a member having a double rocking-surface located in the aperture between said bearing-surfaces."

"6. A rocker-joint for chain or other devices consisting of two pieces associated together within the parts connected thereby, and having opposing bearing-surfaces and a member between said surfaces upon which either may rock.

"7. In a joint for chains or other devices having parts hinged together, a pintle consisting of two members connected to the respective parts so hinged, and a third member adapted to co-operate with either one of them to form a rocking-surface for the other."

Paul Synnesvedt and Charles C. Linthicum, for appellant.
Charles Howson, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

GROSSCUP, Circuit Judge (after stating the facts as above). In his opinion the Circuit Judge, deciding this case below, said:

"Patent No. 757,762, covers a two-part pintle in combination with a plurality of plates in each link interspersed upon the pintles with the plates of the adjacent links, each plate having an aperture which is so formed as to hold one part of the pintle and allow free clearance of the other, one part of the pintle engaging with the plates of one link only and bearing upon the other part of the pintle. These pintle parts are made to move one upon the other freely, for which purpose the openings in the plates are provided with clearance room. Patent No. 736,999 calls for a pintle device differing from No. 757,762 mainly in that it describes a three-part pintle instead of a two-part pintle. Defendant's device substantially follows patents granted to J. M. Dodge, May 24, 1904, and subsequent to that date and shows a combination of the multiple links with a plain old style pintle and two segmental bushing plates arranged with clearance room in order to provide free sliding or hinge movement of the bushings, which move with their several links, the plates of which bear upon the bushing, and not upon the round pintle. Thus, the friction occurs between the pintle and bushing and not between the link plates and pintle. Defendant insists the bushings are a part of the several links. This would be equally true of complainant's three-part pintle.

"The link chain belt was very old in the art at the time Morse filed the application for the patents in suit, and it was mainly to avoid the wear between the links and the pintles that he devised the joint in question. The wear of the links upon the pintle resulted in lengthening the belt, whereby it failed to engage accurately with the teeth of the sprocket wheel for which it was mainly employed, causing undue friction and ultimate ruin of the wheel or chain or both. In the case of the three-part pintle joint, Morse sought to overcome this by arranging the parts of the pintle so that the two outside members of the pintle would rock upon the middle member. Complainant now seeks to give this patent a construction which shall include hinge or sliding movement of the three parts of the pintle, whereas Morse's action in the patent office changing the terms of the claims, taken together with the reading of the patent in all its phases as granted, utterly exclude any idea other than that the actions of the pintle parts is limited to an arrangement thereof which secures a rocking or rolling co-action thereof, in contra-distinction to a sliding or hinge action."

And again speaking of patent No. 757,762,—

"From the record it appears, that at the time the application for the two-part pintle, Morse had it still in mind to limit its action to a rocking or rolling

motion, but that several years afterwards he added drawing numbered 20, as shown in the patent, disclosing a two-part pintle, one part of which slides back and forth upon the other, the two together making a cylindrical pintle, having clearance spaces. No reference is made in the claims to anything but a rocking or rolling joint, though some of the claims are silent as to the action of the pintle parts. The specifications in line 7, p. 2 read: 'Fig. 20 is a transverse section of the joint, showing a modified form of pintle': in line 78, p. 2: 'Thus for each link the bearing-surface is doubled by the use of the two-part pintle and the wearing away at the pintle is thereby very materially decreased. This feature of my invention is equally applicable to a joint as shown in Fig. 20 formed of pintles so that one part of the pintle G' rubs on or turns in the other part F', as the joint bends.' Under the circumstances, it may be doubted whether the patent covers the device of drawing Fig. 20. However that may be, it is certain that this patent is limited to a two-part pintle, for although in line 8, p. 1, the patentee says: 'This invention relates to improvement in drive chains for general power transmission, and particularly to chains of this class wherein the pintle consists of two parts bearing upon one another,' etc., yet he nowhere claims or describes anything but a two-part pintle."

It is earnestly insisted, however, that whereas in all the other claims of patent No. 757,762, the description is as of a two part pintle, in claim ten there is no such limitation, the description being "and pintles formed in separate parts"; the argument being that such description covers a three part pintle, as well as a two part pintle. But the fact remains, that the specific thing described in the patent is not a three part pintle, but is a two part pintle, and there is nothing in the descriptive portion of the patent indicating that anything else than a two part pintle, either actually or potentially, was in the mind of the inventor.

It is also earnestly insisted that though patent No. 757,762 was applied for more than two years after patent No. 736,999, and was allowed almost eight months afterwards, it constitutes the generic patent—No. 736,999 being for a specific invention only. In this view we cannot concur. This is not a case in which a patentee, having first made application for a patent for a generic invention, has subsequently applied for patents for specific improvements. This is a case in which a patentee, possessed of an alleged generic idea, elected to first apply for a patent for a specific embodiment embracing the essential feature of the generic idea, "the extended bearing," and later specifying such essential feature in another specific embodiment, claims that the generic idea growing out of such essential feature, belongs to the later, and not to the earlier, patent. To allow this, it seems to us would be to make the second patent overlap the first, a result that involves the patentee in this dilemma, either that his second patent is not generic in the respect named, or that it is a double patenting.

On the whole case, we are content to find that the appellee's device is not an infringement of the patents sued upon, and that therefore, the decree appealed from should be affirmed.