MORSE CHAIN CO. v. LINK-BELT CO.

(Circuit Court of Appeals, Second Circuit. June 20, 1911.)

No. 265.

1. PATENTS (§ 328*)—REISSUES—IDENTITY OF INVENTION—DRIVE-CHAIN.
    The Morse reissue patent, No. 12,844 (original No. 757,762), for a drive-chain for power transmission, is void, as not being for the same invention as the original patent, which was clearly limited to a two-part pintle, while in the reissue it was attempted to broaden it to include a pintle of any number of parts more than one, although such a chain had previously been held not to infringe the original patent.

2. PATENTS (§ 165*)—INFRINGEMENT—EFFECT OF UNNECESSARY LIMITATION OF CLAIMS.
    A patentee, who limits his claims to the precise construction shown and described, even though not obliged to do so, cannot hold as an infringer one who uses a different construction.

    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 241; Dec. Dig. § 165.*]

Appeal from the Circuit Court of the United States for the Southern District of New York.

Suit in equity by the Morse Chain Company against the Link-Belt Company. Decree for defendant (182 Fed. 825), and complainant appeals. Affirmed.

See, also, 164 Fed. 331, 90 C. C. A. 650.

J. Edgar Bull and Paul Synnestvedt, for appellant.
Howson & Howson (Charles Howson, of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. [1] The reissued patent relates to an improvement in drive-chains for general power transmission "wherein the pintle consists of two parts bearing upon one another throughout their length along the line of bearing of the link upon the other in the joint." One object of the patentee was to increase the bearing surface at the joint in chains wherein the links are made up of plates of which those in one link are interspersed upon the pintle with those

of the adjacent links and wherein each of the plates of one link engages its respective part of the pintle and turns therewith freely on the other part of the pintle.

Another object is the construction of the chain in such manner that alternate links only engage with the sprocket whereby the parts of the pintles having plain bearing surfaces may be mounted facing each other in those links which do not touch the sprocket and which bearing surfaces are substantially at right angles to the length of the links. any slipping tendency of the rockers upon the seat pins being thereby avoided. A third object is the formation of the seat pin with flattened or otherwise irregular sides throughout, whereby it will hold a fixed position in each of the plates with which it engages, the holes in the links sustaining the seat pin being made to conform substantially to said irregularities. The patentee says:

"One of the chief advantages of the two-part pintle in a plate-chain resides in the fact that a continuous bearing is provided throughout the width of the links, as clearly illustrated in Figure 11. Were the pintle a solid one, the links *D* would have a bearing in the joint for but one-half the length of the pintle and likewise with the links *C*, whereas with a two-part pintle each of said links has a bearing extending from one outside plate *D'* to the other along the line *H*. Figures 8 and 11. Thus for each link the bearing surface is doubled by the use of the two-part pintle, and the wearing away at the pintle is thereby very materially decreased."

Again the patentee says:

"While the explanation of the invention above given has reference specifically to a structure in which the pintle is described as composed of 'two' parts, it is obvious that the generic idea involved is applicable to a structure having a pintle made in 'separate' parts, whether there be two or any other number of parts more than one. A three-part pintle chain of analogous structure is shown in one of the modifications of the applicant's patent No. 736,999 which was copending with the original letters patent No. 757,762. I do not in this patent cover per se a pintle made in two parts, or in separate parts (whether two or more) irrespective of the form of links with which the pintle is associated. On the contrary, all the claims of this patent in which the pintles are elements are limited to the employment of such pintles in what are commonly known as multi-plate chains or links, whereby the effective bearing surface is increased."

The original patent contained no statement similar to the paragraph last quoted and the description and claims were confined to a two-part pintle.

The claims of the reissue which are involved are as follows, No. 12 being a new claim:

"6. A drive-chain having each link composed of a plurality of plates, the plates of each link being interspersed upon the pintles with the plates of the adjacent links, and two-part pintles of which the seat-pins have flattened sides throughout their length whereby they hold a fixed position in each of the plates with which they engage."

"9. A drive-chain having adjacent links composed of a plurality of plates adapted to arch over the sprocket-teeth, the plates of each link being interspersed upon the pintles with the plates of the adjacent links, and pintles formed in two parts, of which one part engages with the plates of one link only and passes freely through openings in the plates of the adjacent link, and the other part engages with the plates of said adjacent link and passes freely through openings in the plates of the first-mentioned link."

"10. A drive-chain having adjacent links composed of a plurality of

plates adapted to arch over the sprocket-teeth, the plates of each link being interspersed upon the pintles with the plates of the adjacent links, and pintles formed in separate parts which bear upon each other throughout substantially the full width of the chain, one part of the pintle engaging with the plates of one link only and passing freely through openings in the plates of the adjacent link."

"12. A drive-chain having adjacent links composed of a plurality of plates adapted to arch over the sprocket-teeth, the plates of each link being provided with apertures at their ends and interspersed upon the pintles with the plates of the adjacent links, and pintles, formed in a plurality of separate parts adapted to engage one with another to form a longitudinally extended bearing throughout substantially the full width of the chain one of the parts of the pintle being so engaged in the apertures of the plates of one link only as to turn therewith and passing freely through the apertures in the plates of the adjacent link, and another of the parts of the pintle being so engaged in the apertures of the plates of such adjacent link as to turn therewith, and passing freely through the apertures in the plates of the other link."

The original was in litigation in the Seventh circuit where a decree dismissing the bill was affirmed by the Circuit Court of Appeals in Morse Chain Co. v. Link-Belt Co. 164 Fed. 331.

In the Circuit Court the action was based upon two patents to Morse, No. 736,999 granted August 25, 1903, and No. 757,762 which was subsequently reissued. Judge Kohlsaat, in the Circuit Court, speaking of the complainant's contention that No. 757,762 was the broad patent and No. 736,999 the specific patent, says:

"But upon what ground complainant at this late day seeks to set up the two-part pintle patent as generic I am unable to discover from the record. It seems to have no other foundation than its desire to show infringement. That patent is, in all its terms, limited to a two-part pintle. Its other features are multi-plate links, and also some details in the adjustment of the parts. The multi-plate links were old. The two-part pintle was also old."

The bill was dismissed because the defendant's three-part pintle did not infringe the two-part pintles of the claims. The Court of Appeals in affirming the decree said (164 Fed. 331, 333, 90 C. C. A. 650, 652):

"It is earnestly insisted, however, that whereas in all the other claims of patent No. 757,762, the description is as of a two-part pintle; in claim ten there is no such limitation, the description being 'and pintles formed in separate parts;' the argument being that such description covers a three-part pintle, as well as a two-part pintle. But the fact remains, that the specific thing described in the patent is not a three-part pintle, but is a two-part pintle, and there is nothing in the descriptive portion of the patent indicating that anything else than a two-part pintle, either actually or potentially, was in the mind of the inventor."

Although the court was clearly of the opinion that the invention of No. 757,762 was not generic and, if held to be generic, that the patent was void for double patenting, concludes its opinion as follows:

"On the whole case, we are content to find that the appellee's device is not an infringement of the patents sued upon, and that, therefore, the decree appealed from should be affirmed."

The parties to this action are the same as in the seventh circuit. The mere fact that there was a change of name of the defendant cor-

poration from Link-Belt Machinery Company to Link-Belt Company does not alter the fact that it is the same corporation which defended the Illinois action. The following propositions have, therefore, been decided between the parties or their privies.

First.—That the defendant's chain does not infringe the claims of the original patent.

Second.—That the original patent was for a two-part pintle in combination with a plurality of plates in each link.

Third.—That patent No. 736,999 describes a pintle differing from 757,762 in that it has three instead of two parts.

Fourth.—That the action of Morse in the patent office, taken in connection with the reading of the patent, excludes any idea other than that the action of the pintle parts is limited to an arrangement thereof which secures a rocking or rolling co-action thereof as distinguished from a sliding or hinge action.

Fifth.—That multiple links and two-parts pintles were old.

Sixth.—That a three-part pintle discloses patentable novelty over a two-part pintle.

In this situation, with these propositions decided against him, the patentee applied for a reissue four years and two months after the date of the original patent. Five judges have decided that the invention of the original is not the same as that of the reissue. The judges of the Seventh circuit held this by implication, having decided that the defendant's three-part pintle did not infringe the claims which were limited to a two-part pintle, and Judge Hand held it directly.

In these circumstances we should be very sure of our position before running counter to such a weight of authority. After giving careful consideration to all the arguments presented we are convinced that the decision below is right and cannot be overthrown without giving to the claims an unwarranted construction.

Morse was not a pioneer, he did not make a broad generic invention and he was not the first to use two-part pintles in drive-chains. In 1876 Neumann procured a patent for such a chain. It was a clumsy unsatisfactory structure but the pintle is there, nevertheless; the parts "having oval surfaces of the sides bearing together." Gautier, Dodge, Holt and others show similar constructions. Indeed, Morse himself, as early as 1893, shows a two-part pintle in his patent No. 507,153; and again, in 1900, in his patent No. 663,352. When, in 1904, he took out his original patent there was room for improvements, but the broad conception was not new. Other inventors, if they made patentable improvements, were entitled to use them, provided they did not use the specific devices of the Morse patent. There is nothing in the original patent to indicate that Morse intended to cover a three-part pintle. As to this proposition there can be no controversy; it has been so decided and the complainant has acquiesced in the decisions by surrendering the patent and asking for a reissue.

[2] Of the claims in controversy the sixth and ninth are expressly limited to a two-part pintle. The tenth is so limited by implication as it provides for "pintles formed in separate parts which bear upon each other," which, in view of the context, can mean a two-part pintle

only. Even if the reissue were valid these claims would not be infringed. A patentee who limits his claims to the precise construction shown and described, even though not obliged to do so, cannot hold as an infringer one who uses a different construction. The new claim, the twelfth, if valid, is probably infringed, as it provides for "pintles formed in a plurality of separate parts." If, however, it be construed to cover a three-part pintle, it is void, as no such structure is described or claimed in the original. The defendant is operating under a patent to Dodge dated May 24, 1904; four years prior to the date of the reissued patent. The defendant's chain did not infringe the original patent and in order to hold it under claim twelve we must conclude that it and the structure covered by that claim embody the same invention described in the original patent. Obviously they do not.

The seventh claim of the Dodge patent is for:

"The combination of two links, a segmental bushing attached to each link, and a pivot-pin free to move upon the segmental bearing-surfaces of both bushings substantially as described."

Assuming that this language describes, and that the defendant uses a three-part pintle, it is plain that it is not the same construction covered by the claims of the original Morse patent. It cannot be maintained that a two-part pintle is the same as a three-part pintle or that the one includes the other. It may well be that in similar structures the entire invention consists in reducing the number of parts. It may be that a two-part pintle has advantages over a three-part pintle. At all events, it is manifest that Morse thought this to be the case, because throughout the proceedings in the patent office, he took pains to limit his claims to a two-part pintle and never intimated that his invention could be embodied in any other structure. The inference seems plain that it was only when he found that chains with pintles composed of more than two parts would operate successfully that he sought by a reissue to compel them to pay tribute. The reissue statute was not intended to produce a result so inequitable.

The argument against the validity of the reissue is clearly and ably presented in the opinion below and nothing further need be added. The decree is affirmed.