DEISTER CONCENTRATOR CO. v. DEISTER MACH. CO.

(Circuit Court of Appeals, Seventh Circuit. January 6, 1920. Rehearing Denied February 20, 1920.)

No. 2654.

1. PATENTS ☞328—FOR IMPROVEMENTS IN CONCENTRATING TABLES VALID AND INFRINGED.

Claim 4 of patent No. 1,040,164, for a concentrating table, one element of which is a plateau having its surface above, but substantially parallel with, the general surface of the table, and claim 1 of patent No. 1,040,165, for a concentrating table having the same element, *held* valid and infringed, though the plateau of defendant's table was not precisely parallel with the surface of the table.

2. PATENTS ☞324(5)—WEIGHT OF TESTIMONY IN INFRINGEMENT SUIT IS FOR DISTRICT JUDGE.

In a suit for infringement of a patent for a concentrating table having a plateau substantially parallel with its surface, the weight of testimony that defendant's plateau, which as originally constructed had an upward inclination, was later planed down, was for the District Judge, though the witness had left defendant's employment and entered that of plaintiff.

3. PATENTS ☞177—LANGUAGE TO BE CONSTRUED WITH REFERENCE TO ENTIRE PATENT.

Where the location of one element in a combination is fixed absolutely or relatively by reference to another element, a fair construction of such language is obtainable only from a study of the entire patent.

4. PATENTS ☞177—COURT WILL LOOK BEYOND MERE LANGUAGE OF CLAIM IN DETERMINING INFRINGEMENT.

Even where the language of a claim fixes the position of an element in a combination absolutely, the court in determining infringement will look beyond the mere language.

5. PATENTS ☞121—CLAIM NOT VOID BECAUSE IT MIGHT HAVE BEEN INCLUDED IN COPENDING APPLICATION.

Where applications by the same person for patents for improvements in concentrating tables were copending, and the patents were issued on the same day, a claim of the patent bearing the highest number was not void, though it was the broader or more generic claim, and might have been joined with the claims of the first patent.

6. PATENTS ☞97—NO PRESUMPTION AS TO ORDER OF ISSUANCE OF PATENTS TO SAME APPLICANT ON SAME DAY.

Where patents were issued on the same day to the same applicant on copending applications, it could not be assumed that the issuance of the one having the smallest number preceded the issuance of the other.

7. PATENTS ☞328—PATENT FOR IMPROVEMENTS IN CONCENTRATING TABLES VALID AND INFRINGED.

Claims 1, 4, and 5 of the Deister patent, No. 1,088,685, for a concentrating table having a plurality of plateaus with the front edge of the final plateau forming the mineral discharge edge, *held* valid and infringed, though defendant's final plateau was rounded near the edge.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

8. PATENTS ⟨⇒177—ELEMENT OF COMBINATION, THOUGH VALUELESS, CANNOT
BE DISREGARDED.

Where a patentee of a concentrating table specified as one element of
his combination a plurality of plateaus, with the front edge of the final
plateau forming the mineral discharge edge, he was limited to a table in
which the front edge of the final plateau formed the mineral discharge
edge though such element was valueless.

Appeal from the District Court of the United States for the District
of Indiana.

Suit by the Deister Machine Company against the Deister Con-
centrator Company. Decree for plaintiff, and defendant appeals. Af-
firmed.

See, also, 241 Fed. 379, —— C. C. A. ——.

Walter A. Knight, of Cincinnati, Ohio, for appellant.

Darwin S. Wolcott, of Pittsburgh, Pa., for appellee.

Before BAKER, EVANS, and PAGE, Circuit Judges.

EVANS, Circuit Judge. Appellant attacks the decree upholding
certain claims in three patents covering improvements in concentrating
tables, asserting that all the patents are invalid, and that its structures
do not infringe any of the claims involved. It also claims that as to
the first two patents issued there has been double patenting. A brief
description of the purpose and method of operation of concentrating
tables will serve to explain the problem confronting appellee's prede-
cessor in title to the patents in question, as well as the means adopted
to solve it.

Tables used in mining operations to separate and collect together
mineral ores found in silica and rock, in other words, to concentrate
the value from the gangue or tailings, are called "concentrating tables."
Ore-bearing deposits are first crushed, and then mixed with water,
and then fed onto a table which has a longitudinal reciprocal motion,
"the forward movement starting slowly, then accelerates, and stops
suddenly, making a quick return. The effect of this motion is to
advance the different ingredients deposited on the table and at the
same time stratify them; the ores, being the heaviest, gravitate to
the bottom of the mass, and come in direct contact with the table.
The silica, dirt, etc., are gradually washed away from the ore and
discharged over one edge of the table, called the "tailings discharge
edge." In order to prevent the ore from also being carried over,
riffles are provided upon the surface of the table, their purpose being
to stop or catch and hold the ores, at the same time permitting the
silica and dirt to pass over. These riffles are placed differently on
different tables, varying in height as well as in length. Their use
was old when the applications for the patents in suit were filed.

The tables were tipped sidewise in the direction of the flow of the
wash water, and lengthwise in the direction of the movement. The
extent of the tip, as well as the size and location of the riffles, depend-
ed largely upon the coarseness of the pulp ore and upon its specific

⟨⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

gravity. In fact, the tables were so constructed as to permit of an adjustment of the tilt while in operation.

Various types of concentrating tables were well known to the trade in 1912. Some were covered by patents, and certain factors in the successful operation of all concentrating tables were well recognized at that date. Among the well-known types were the Gilpin County bumping table, the Gold Coast of Africa table, the Overstrom table, and the Butchart bent riffle table. From these types, as well as from various patents, we find that riffles were old, resistance planes were old, and the reciprocal longitudinal movement and the tipping or tilting of the table were all well known, and had been commonly practiced for many years prior to the appearance of appellee's tables.

Appellee's predecessors in title were far from pioneers in the art. They conceived and worked out, however, what they assert was an improvement over other tables. Their new table, which was a combination with most of the elements old, possessed merit because of the location and construction of these elements. A new element was added, which, co-operating with the others, doubled, so it is claimed, the capacity of the table, without increasing the loss in the tailings, secured a cleaner and greater quantity of ore values and reduced the item of labor cost. There is some evidence to support these assertions. That an increased capacity without loss in the tailings resulted is not seriously disputed.

Claim 4 of patent No. 1,040,164 reads:

"4. A concentrating table, having its main surface in a single plane and suitably inclined, in combination with means for distributing material across the head of the table, riffles arranged at such an angle to the flow of material from the head as to divert the minerals toward the mineral discharge edge, *a plateau having its surface above but substantially parallel with the general surface of the table* and arranged with its inner edge at an angle less than ninety degrees to said riffle, and riffles extending across the plateau."

Claim 1 of patent No. 1,040,165 reads:

"7. A concentrating table inclined downwardly from its head and upwardly from its rear side, in combination with means for uniformly distributing the material to be treated across the upper end, riffles arranged traverse of the main surface of the table, *and a plateau having its surface above but substantially parallel with the main surface, and arranged to intersect the line of movement of the material due to the vibrations of the table.*"

Claims 1, 4, and 5 of patent No. 1,088,685 read:

"1. A concentrating table, having in combination therewith a plurality of plateaus arranged transverse of the lines of movement of the values toward the mineral discharge end, and having their surfaces higher than that of the main or stratifying surface and the surface of each succeeding plateau being higher than that of the preceding plateau, *the front edge of the final plateau of the series forming the mineral discharge edge* and a plateau or plateaus intermediate the main surface of the table and the last plateau being adapted to permit of a further stratification of the material and to deliver concentrates as a stratum to the plateau having the mineral discharge edge."

"4. A concentrating table, having a combination therewith a plurality of plateaus arranged transverse of the lines of movement of the values toward the mineral discharge edge, the main or stratifying surface of the table and the surfaces of the plateaus being in different but *parallel* planes and the rear edges of the plateaus being beveled or inclined to facilitate the upward and

onward movements of the values, *the front edge of the final plateau of the series forming the mineral discharge edge* and a plateau or plateaus intermediate the main surface of the table and the last plateau being adapted to permit of a further stratification of the material and to deliver concentrates as a stratum to the plateau having the mineral discharge edge."

"5. A concentrating table, having in combination therewith a plurality of plateaus arranged transverse of the lines of movement of the values toward the mineral discharge edge and having their surfaces higher than that of the main or stratifying surface, and the surface of each succeeding plateau being higher than that of the preceding plateau, and riffles arranged on the main or stratifying surface and extending onto the plateau next adjacent to the mineral discharge edge, *the front edge of the final plateau of the series forming the mineral discharge edge* and a plateau or plateaus intermediate the main surface of the table and the last plateau being adapted to permit of a further stratification of the material and to deliver concentrates as a stratum to the plateau having the mineral discharge edge."

[1, 2] The two patents first issued may well be considered together. The element italicized in each claim is emphasized because of its asserted importance in the combination. That this element was new in table construction at this time is, we think, clearly established; that it increased the capacity of the table is likewise shown.

It was by no means merely a case of repetition of process, as at first blush it might seem. On each concentrating table there are areas of separation as well as places of discharge for separated substances. The riffles play no small part in this separation. The height of the riffles and the character of the movement of the table are the chief factors in this process. The presence of the plateau and the resistance plane by which it was connected with the main surface of the table made it possible to rearrange the height and length and relative position of the riffles which in turn resulted in an increase in the quantity of material handled. Likewise because of the accentuation of the line of separation it was possible for one man to attend to an increased number of tables.

*Noninfringement.*—Appellant claims its plateau is not substantially parallel with the chief table surface. But we are not at all impressed with its argument in view of the evidence on this phase of the case. Its first construction was formed with an upward inclination of one-sixteenth of an inch for a distance of 24 inches, then a similar downward inclination. It afterwards modified this slight deviation from exact parallelism by causing its mechanic to "plane off the ridge" about three sixty-fourths of an inch. It is hardly conceivable why "the plateau" should be so built, and then planed down to "level," unless appellant was attempting to establish a case of colorable noninfringement. It is true the weight of this testimony is somewhat shaken by other evidence. The witness who testified that he was the mechanic that planed off the ridge left the services of appellant and secured employment with appellee. But the weight of his testimony was for the District Judge to determine. Appellant has the burden of establishing its falsity.

[3, 4] Moreover, it was not essential that the plateau be "exactly parallel." "Substantially parallel" was the phrase used in the claim, and that is all that need be disclosed. A variation of one-sixteenth of an inch, spread over a distance of 24 inches, might perhaps under

certain imaginable circumstances be such a deviation from substantial parallelism as to support a finding of noninfringement; but it is not sufficient to warrant such a finding in the instant case. Where the location of one element in a combination is fixed, either absolutely or relatively by reference to another element, a fair construction of such language is obtainable only from a study of the entire patent. Even where the language of the claim fixes the position of an element absolutely, the court will, in determining infringement, look beyond the mere language. In other words, it will look to the real substance of the claims. In the present case, what was meant by "substantially parallel"? What advantages were sought through substantial parallelism? It is apparent from a reading of the entire patent that the applicant was seeking to prevent congestion of material on the dam or incline connecting the plateau with the main surface of the table. If the plateau was approximately parallel, then the material leaving the apex of the dam or incline would move more rapidly than it traveled while ascending the incline, with the result that the minerals would spread out and the wash water would remove the slime or sand that was carried up the incline by the values. Thus "substantially parallel" as used in these claims is a relative term, and is not to be construed as synonymous with exactly or precisely parallel.

Appellant's plateau is sufficiently parallel to constitute infringement. Other contentions to support the defense of noninfringement we need not separately analyze. We have considered them carefully, with the result that we conclude that the two claims under consideration in the first two patents are valid and infringed.

[5] Appellant presents an interesting question arising out of its defense of invalidity of patent No. 1,040,165, due to alleged double patenting. It contends that claim 4 of the earlier numbered patent was the narrower claim, while claim 1 of the later patent is the broader or more generic one; that the specifications of the first patent are sufficient to support both claims, and therefore the later patent is invalid. In support of its position it cites Walker on Patents (5th Ed.) § 180a; Miller v. Eagle Lock Co., 151 U. S. 186, 14 Sup. Ct. 310, 38 L. Ed. 121; Otis Elevator Co. v. Portland Co., 127 Fed. 557, 62 C. C. A. 339; Morse Chain Co. v. Link & Belt Machinery Co., 164 Fed. 331, 90 C. C. A. 650; Union Typewriter Co. v. Smith, 181 Fed. 966, 104 C. C. A. 430. Its position is best expressed in a quotation from the opinion in Miller v. Eagle Lock Co., supra—

"The result of the foregoing and other authorities is that no patent can issue for an invention actually covered by a former patent, especially to the same patentee, although the terms of the claims may differ; that the second patent, although containing a broader claim, more generical in its character, than the specific claims contained in the prior patent, is also void."

[6] But there has been no double patenting in the present case. The two applications were copending. Grant for the purpose of the argument that the specifications in the first application were sufficient to support the claims included in both patents, and that claim 1, patent No. 1,040,165, is the broader or more generic claim; yet it by no means follows that the broader claim is void. The two patents were

issued on the same day. It would be erroneous to assume that the issuance of one preceded the issuance of the other, when the two applications were copending—one referred to the other and both had a common applicant. The number which the patent bears under these circumstances can have no significance whatsoever.

Again, where one admittedly files an application in the Patent Office for a patent on an improvement there can be no doubt as to his right pending the hearing to amend his claims or add new ones. Why should he not be permitted to file several applications, each containing a single claim? What are separate claims but descriptions of separate inventions? While certain ones may be joinable, and should be, does the fact that a single applicant files two applications where one would suffice, defeat one, and, if so, which one? Elimination of expense will no doubt cause the applicant to join in a single patent as many claims as are ordinarily joinable, but our attention has not been called to any provision of the patent law which would justify the examiner in dismissing one application, where numerous separate valid claims existed, simply because its claims are joinable with claims in a copending application by the same party. Doubtless the Patent Office could promulgate rules calling for a consolidation of the copending applications that would be enforceable just as it now provides rules calling for a division in appropriate cases.

In the present case, the urge of appellee, that, by its first application, though dealing with concentrating tables, it was dealing with a pulp ore that was coarse, while in the second application it was dealing with a table handling finer material, is not without merit. Whether such differences required separate applications we need not determine. We are not prepared to say the claims in the second patent were not joinable with the claims of the first patent; but we are convinced that no damage to the public resulted from their separate presentation, in view of their simultaneous issuance. No fraud was practiced or intended by the applicant, as is shown by the fact that reference to the first pending application appears in the second.

[7] *Patent No. 1,088,685.*—The claims in suit are narrow. In view of the prior art, and especially in view of the patents just considered dealing with the element known as a plateau and the incline leading thereto, the claims under consideration in this patent must be given a strict construction. So construed, however, we think the presumption attending the grant of the patent has not been overcome.

In determining this question we must recognize that concentrating tables are made to handle various kinds of ores; that pulp ore varies in different mines, even in the same mines; that different ores require somewhat different treatment. In some instances, particularly lead and zinc mines, the table is required to handle two or more ores of different specific gravity. Also it is significant that the silica, dirt, and rock varies in coarseness as well as in specific gravity. It by no means follows, therefore, that a concentrating table that may give the best satisfaction in the treatment of one grade of pulp ore will meet with even a fair degree of success in another mine where entirely different conditions exist. These facts cannot be ignored in determining

the validity of a combination patent that is admittedly designed to meet a practical problem in the mining industry.

In constructing the table described in this patent, Deister sought to shorten the table, and also to provide for more rapid concentration. He attacked the problem by using a plurality of plateaus, which made it possible for him to use a table whereon the material traveled rapidly, where stratification of the material was prompt and complete, and the separation of values from the gangue was accelerated.

Appellant insists that, nevertheless, inventive skill was not disclosed; for, having discovered the value of the plateau and the incline leading thereto as disclosed in the earlier patents, Deister exercised nothing but an ordinary degree of mechanical skill in making use of successive plateaus. But this is not merely a case of using successive plateaus. The use of each plateau is inseparately connected with the location and the height of the riffles on each plateau, the motion of the tables, and use of the water, etc. It is a combination where each element works in conjunction with the other elements.

In practical operation we find results perhaps not unlike those found in the tables covered by the patents just considered; but, clearly, the steps differ by which the results are attained. In this table an earlier stratification was sought. This was better accomplished by the level table. The inclines leading to the plateau made it possible for the table to be practically level. The incline found in the table in the patents just considered is absent. Stratification on the plateau and on the main surface was therefore accelerated and also more complete. The abrupt inclines leading to the plateaus operated as effective resistance planes that cut off the gangue and prevented it from passing forward at this point.

We cannot say that this specific structure, designed to meet a specific problem, was but an exercise of mechanical skill.

*Infringement.*—But one contention of the appellant in support of its claim of noninfringement will be considered. It contends that its structure was not provided with the italicized element found in each of the three claims under consideration. In other words, it claims that its "front edge of the final plateau" did not form "the mineral discharge edge."

[8] It must be admitted that appellee, having made this element a part of his combination cannot escape the consequences thereof, although the element be quite valueless in the combination. Is appellant's structure provided with a final plateau, "the front edge of which" is also "the mineral discharge edge"?

Appellant's table was described by appellee's witness as follows:

"Well just at the edge of the table there is always a little round hump there to keep the edge from being high right at the extreme edge."

He further stated that this little round hump extended back from the edge of the plateau three or four inches.

There is an unusual dearth of evidence on this point, doubtless due to the absence of dispute as to appellee's structure. Appellant described the portion of its table next to the mineral discharge edge "as

sloping downward onto that edge to facilitate carrying off the concentrated material," while claiming that "appellee's patents all show the final plateau, and all plateaus, parallel with the main surface of the top of the table."

Assuming this description of appellant's table to be correct, and there seems to be no especial conflict between it and the statement of appellee's counsel, can the rounding of the edge, to facilitate the discharge of the mineral, constitute such a change as to avoid infringement? We think not. Even though the edge be rounded, it would still be the "front edge of the final plateau," and also would be the "mineral discharge edge." It is true that this last plateau would not, for its entire length, be parallel with the preceding ones, but parallelism is not even required in claims 1 and 5 of this patent. But parallelism of plateaus would exist, notwithstanding there was a slight rounding of the last one at its edge. The unmistakable object of the rounding was to facilitate the discharge of the material from the table.

The decree is affirmed.