**VAPOR CAR HEATING CO. et al. v. GOLD, CAR HEATING & LIGHTING CO.**

(Circuit Court of Appeals, Second Circuit. December 20, 1926.)

No. 99.

**1. Patents ⟨⟩328—No. 944,187, claims 12, 20, for heating system for railway cars, held not infringed.**

Gold patent, No. 944,187, claims 12 and 20, for steam-heating system for railway cars, held not infringed.

**2. Patents ⟨⟩328—No. 925,896, for steam-heating system for railway cars, claim 5, held invalid, and claim 8 not infringed.**

Gold patent, No. 925,896, for steam-heating system for railway cars, claim 5, held invalid, and claim 8 not infringed.

**3. Patents ⟨⟩328—Reissue No. 13,059, for heating system for railway cars, claims 1, 6, 7 held valid and infringed, and claims 17, 18, 19, 21 void.**

Gold reissue 13,059 (original No. 890,128), for steam-heating system for railway cars, claims 1, 6, and 7, held valid and infringed, and claims 17, 18, 19, and 21 void.

**4. Patents ⟨⟩318(1)—Only actual profits held recoverable in accounting for patent infringement.**

In accounting for patent infringement, only actual profits could be recovered, where infringer paid over to railroad a portion of profits received from car builders for steam-heating equipment installed on railroad's requisition.

Appeal from the District Court of the United States for the Southern District of New York.

Patent infringement suit by the Vapor Car Heating Company and another against the Gold Car Heating & Lighting Company. Decree for plaintiffs, granting only part of the relief prayed (296 F. 188), and plaintiffs appeal. Affirmed.

Appeal from final decree entered in the District Court for the Southern District of New York, in suit on certain patents.

Two suits on allied patents were heard on the same testimony in the court below, and there resulted (296 F. 188):

Decree that patent 758,436, for a "low-pressure heating system," to Egbert H. Gold, granted April 26, 1904, application filed August 24, 1903, was invalid. No appeal has been taken from this ruling.

Decree that patent 768,019, for an "automatic device for low-pressure heating," to the same patentee, granted August 16, 1904, application filed January 11, 1904, was valid as to claim 6 and infringed. As to this patent, the accounting was abandoned, and no appeal has been taken.

Also that patent 925,896, for a "converti-

ble heating system," to the same patentee, granted June 22, 1909, application filed January 30, 1905, was void as to claim 5 and not infringed as to claim 8. This has been known as the "two-outlet patent."

Also that patent 944,187, for a "heating system," to the same patentee, granted December 21, 1909, application filed January 27, 1905, was not infringed as to claims 12 and 20. This has been known as the "one-outlet patent."

And finally that reissue 13,059 (original 890,128, dated June 9, 1908), application filed May 21, 1909, granted December 21, 1909, for a "heating system," to the same patentee, was valid and infringed as to claims 1, 6, and 7, but that the other claims in suit (8, 11, 17, 18, 19, and 21) were either void or substantially similar to the earlier claims upheld. This has been known as the "attachment patent."

An accounting was had, and plaintiff awarded less than $400. Defendant has not appealed, plaintiff has, complaining, first, that the court below erred in holding invalid the claims of the "one" and "two" outlet and attachment patents above specified; second, in holding uninfringed the other claims of said patents above specified; and, third, in holding that a device of defendant, known as the "coiled thermostat" apparatus, was not subject to the claims of the attachment patent. Certain other errors alleged to have been committed on the accounting will be referred to in opinion.

No. 758,436 having ut supra been declared invalid, plaintiff brought another suit on a separate patent for (as the court found) the process of heating by the mechanism covered by the invalidated patent. This bill was dismissed in 296 F. 201, and the decree affirmed in 7 F.(2d) 284, certiorari denied 268 U. S. 705, 45 S. Ct. 639, 69 L. Ed. 1167.

The present appeal is the latest chapter in a mass of litigation between Egbert and Edward Gold (and corporations identified with them), now lasting nearly a quarter century, and summarized in Gold v. Newton (C. C. A.) 254 F. 824, and again in Vapor Car Heating Co. v. Gold Car Heating & Lighting Co. (C. C. A.) 7 F.(2d) 284, in both which reports the subject-matter of dispute, interchangeable or convertible systems of car heating by engine steam, is sufficiently explained.

Otto R. Barnett and Percival H. Truman, both of Chicago, Ill., and Alfred W. Kiddle and Wylie C. Margeson, both of New York City, for appellants.

William A. Redding, Arthur C. Fraser, Ambrose L. O'Shea, and Redding, Greeley, O'Shea & Campbell, all of New York City, for appellee.

Before HOUGH and MANTON, Circuit Judges, and AUGUSTUS N. HAND, District Judge.

HOUGH, Circuit Judge (after stating the facts as above). Argument at bar, and indeed the opinions below, show that we did not succeed in being perfectly clear in Gold v. Newton, supra. By whatever paths reached, or for whatever reasons given, our holding in that case was that Weber, 403,162, anticipated Edward Gold's application for a patent broadly covering the convertible system, and that holding, since Edward had won priority over Egbert Gold, involved the conclusion that Weber must also anticipate Egbert in respect of anything of similar breadth that he might claim respecting the premises. Having stated this finding, and noted that 758,436 is broadly for a system, and (as to the claims in suit) is now finally adjudicated invalid as between these parties, we shall proceed separately and briefly to consider the patents as to which appeal has been taken.

### The One-Outlet Patent.

[1] In the specification itself, the patentee says: "I do not here broadly claim the combination with automatically controlled inlet and outlet valves of means for converting a heating system into a high-pressure system or a low-pressure system at will." When these words were written the patentee was still contending with his namesake, and apparently quite unaware that Weber was to be held to anticipate both.

It follows that the patent cannot be broadly construed. A typical claim is No. 12, reading thus:

"The combination, with a system of circulating pipes provided with an outlet, of means for automatically controlling said outlet, a thermostat separate from said outlet-closing means and located so as to be operatively influenced by steam flowing from the effective radiating portion of said system, an inlet valve in operative relation to said thermostat and arranged to control the inflow to said system, and a nonautomatic valve arranged to control the flow of steam to a point where it will operatively influence said thermostat."

It is enough to justify the result below that all defendant's devices have two outlets, and, if the claim be read to cover two outlets, it is void on the prior "two-outlet" patent. The decree is affirmed as to this contention.

## The Two-Outlet Patent.

[2] The fifth claim (held void) is as follows:

"The combination, with a system of circulating pipes provided with two outlets, one of which is provided with means for automatically opening and closing it to permit the discharge of water condensation, of a thermostat in the part of the system in communication with the other of said outlets, and arranged to be operatively influenced by the condition of the heating medium in said system to automatically control the inflow of said heating medium to said system, and means for cutting said thermostat and said last-named outlet out of operative relation to said system."

These words literally read upon the patentee's earlier patent 771,628, and when that disclosure is compared with the application over which Edward Gold was awarded priority, and it be remembered that both Egbert and Edward were anticipated by Weber, we see no way in which the claim can be upheld.

As for claim 8, it can only be upheld as a specific device for changing from one pressure to another by the particular means disclosed—a three-way cock, which defendant does not use; hence no infringement. The decree below is upheld as to this patent.

## The Attachment Patent.

[3] We have deliberately followed the nomenclature below, and called this the "attachment" patent, because that word connotes its very narrow scope. As the patentee said in the specification, it is, to use the device, "merely necessary to cut off a portion of the lower part of the blow-off pipe" and to "mount my present attachment thereon," and to do this "below the floor of the car, * * * and without entering the car." A crucial question is: What blow-off pipe? The answer is, the pipe of the prior art—indeed, of Egbert Gold's earlier patents. The invention introduced no new principle or mode of operation; it was no more than a clever mechanical aid for one who wished to alter an existing pressure heating apparatus into one capable of operating convertibly.

This was shown in the original patent, 890,138, and is covered by claims 1, 6, and 7, which, with merely verbal changes, are alike in original and reissue.

Claim 1 (to which 6 and 7 are specific) reads thus:

"The combination with a radiating system, a supply pipe and a trap communicating with the radiating system, said trap comprising a drip pipe, a valve to close said drip pipe, a blow-off pipe, and a nonautomatic valve for said blow-off pipe, of an attachment connected with said trap, said attachment comprising a casing having therein a valve chamber communicating with said supply pipe and with the radiating system, and an outlet chamber communicating with the blow-off pipe, an inlet valve in said valve chamber to shut off communication between the supply pipe and the radiating system, and a thermostatic device in the outlet chamber to control said inlet valve."

As it is admitted that claims 8 and 11 "cannot be differentiated (from 1, 6, and 7) either as to validity, infringement or relief granted," we need not discuss them further, although they were added on obtaining reissue.

Claims 17, 18, 19, and 21 may, as appellant asserts, be "grouped together," and all were inserted on reissue. No. 21 will exemplify them:

"The combination, with a radiating system, of a supply pipe, an exhaust pipe having a drip opening, a valve to control the flow from the supply pipe into the radiating system, a blow-off pipe, a thermostatic device arranged so as to be influenced by the fluid discharged into said blow-off pipe and arranged in operative relation with said inlet valve, and a positive, hand-operated valve to open and close communication between the exhaust pipe and the blow-off pipe."

The difference between this claim and No. 1 is apparent. The latter is for a mechanical device, a sort of appliance convenient for the steam fitter, which in a compact and ready way made *by that special* contrivance a straight system into a convertible one; the former will read on many *systems*, if not any system, built of familiar parts, but not embodying the plaintiff's *attachment*.

But we hold it clear, as did the court below, that the disclosure of the original showed no system whatever; it assumed several, and showed only a special device for conversion. It seems to us, also, that the reissue claims last specified are void for broadening, under cases too familiar to require much citation. Morse v. Link-Belt (C. C. A.) 189 F. 584.

## Defendant's "Coiled Thermostat."

The attachment patent defines (claim 1, supra) what was invented as "comprising a casing having * * * an *outlet chamber* communicating with the blow-off pipe" and a "thermostatic device in the outlet chamber to control said inlet valve."

The defendant's device in question has a thin copper tube filled with volatile liquid

coiled around the blow-off pipe. This filled tube extends to a thermostat, which operates on expansion to close the inlet valve. Such a device has no "outlet chamber" and no "casing"; that it has no similarity to plaintiff's attachment seems to us nearly self-evident.

The result below as to the attachment patent is also affirmed.

### The Accounting.

[4] Defendant accounted for sales of apparatus infringing claims 1, 6, and 7 of the attachment patent, and it thereupon appeared that, while its wares were formally sold to car builders, these heating devices were only installed on the order or requisition of the railways for which the cars were built, and these railways required the defendant to pay over to them a share, portion, or percentage of what it received from the car builders. This resulted in depriving defendant of any substantial profit. We approve of the master's holding that only actual profits could be recovered, and think the rule fundamental, Merrell, etc., Co., v. Powdered Milk Co. (C. C. A.) 7 F.(2d) 297, and cases cited.

When the matters just stated were developing, the lower court passed a special order requiring defendant to prepare and file an account of profits derived by it from sales of admittedly noninfringing goods during the accounting period, apparently for the purpose of ascertaining whether defendant had parted with its infringing apparatus at rates yielding almost no profit, in order to obtain the custom of the railways for noninfringing material.

The master found that no such methods had been pursued and denied recovery. This finding of fact (with which we agree) renders unnecessary any opinion as to the order; we mention it only because silence might have been regarded as approval.

No other matter seems to require comment, though we have not overlooked the questions of damages and allocated costs.

Decree affirmed, with costs.