**HAMMOND v. ROBERTSON, Commissioner of Patents.**

No. 1395.

District Court, D. Maryland.

May 26, 1931.

Hammond & Littell, of New York City, and Thomas W. Y. Clark, of Baltimore, Md., for plaintiff.

J. F. Mothershead and T. A. Hostetler, both of Washington, D. C., and William C. Baxter, Asst. U. S. Atty., of Baltimore, Md., for defendant.

COLEMAN, District Judge.

This is a suit brought under section 4915 Rev. St. (35 USCA § 63), to require the issuance of a patent, which has been refused by the Commissioner, on a divided rear bumper for automobiles, consisting of what are commonly known as bumperettes; that is, a rear bumper which does not extend entirely across the width of the automobile, but is constructed in two sections, each one of which extends only from one side of the frame of the chassis across the fender on that side. A threefold advantage is claimed for plaintiff's device over the straight bar bumper, in that it (1) permits ready access to the spare tire on the rear of the car; (2) reduces the over-all length of the car; and (3) prevents "hooking" of other cars, etc., by the bumper ends. Upon rejection of plaintiff's application by the Commissioner of Patents, plaintiff appealed to the Court of Appeals of the District of Columbia and there the Commissioner was affirmed. In re Hammond, 58 App. D. C. 98, 25 F.(2d) 359. The Acts of March 2d, 1927, and March 2d, 1929, amending Rev. St. 4915 (35 USCA § 63), and pro-

viding that the remedy by bill in equity would only exist in the event that the applicant had not appealed to the Court of Appeals of the District of Columbia (for which, by the later of the two amendments the Court of Customs and Patent Appeals was substituted), did not become effective until after plaintiff's appeal in the present case from the Commissioner to the Court of Appeals of the District of Columbia had been taken. Therefore, this proceeding is governed by section 4915 as it stood prior to its amendment. The Commissioner of Patents has accepted service, and no question of jurisdiction arises in the present case.

It appears that the divided rear bumper, in one form or another, is now used almost exclusively throughout the country on automobiles. The present plaintiff has had two patents issued to him in the art. The first No. 1,476,807, issued May 3, 1921, covers hinged straight-bar bumpers which, by reason of the hinged member, can be brought very near to the spare tire to reduce the over-all length of the car, and also permits of ready access to the spare tire without the necessity of lifting the tire over the bumper bar. When the original application for this patent was filed (April 23, 1917), it contained a claim which, if it had been granted, would have covered all that the plaintiff is now seeking. However, the Patent Office did not allow this claim but required division whereby the claims were confined to hinged bumpers, with the result that the application now in suit was prosecuted separately. It became involved in interferences terminating favorably to the plaintiff, as a result of which the following single claim (No. 5) of the present application was allowed by the Patent Office: "An automobile bumper comprising a one-piece strap having a re-curved end portion and having substantially parallel side portions, and means for securing the ends of the side portions to a chassis side bar."

During the pendency of the interference involved in the application in suit, a further divisional application was filed to cover subject-matter not involved in these interferences, and this application resulted in the granting to the plaintiff, on December 16, 1924, of the second patent, No. 1,519,540, reissued June 8, 1926, as No. 16359. Some of the claims of this patent call for interconnection of the two bumperettes, namely, the bumperettes are interconnected by means of the spare tire supporting members, or by means of a crossbar between the two bumperettes immediately behind the spare tire, so that a blow on either one of the bumper arms would be transmitted through the arm and the spare tire supporting members, or the cross-bar, to the bumperette at the other side of the car, thus providing a rigid interconnected structure.

Plaintiff claims that these patents still leave him without protection on the use of bumperettes independently mounted at each side of the spare tire, and not cross-connected. Fifteen claims are involved in the application in suit, but plaintiff is in fact not stressing the allowance of other than claims Nos. 3, 4, 9, and 15, of which claim No. 15 is the broadest, and reads as follows: "The combination with the rear of an automobile provided with rear wheel fenders and a rearwardly extending tire carrier, said tire carrier determining the maximum rearward extent of the car, of means for affording protection to said fenders without increasing the over-all length of the automobile, comprising impact members located in the space at each side of the tire carrier and the rear of the fenders, said impact members adapted to protect the fenders while permitting ready access to the spare tire on the tire carrier." Plaintiff claims that the granting of these claims is essential to supply a gap in his existing wall of patent protection, and further that the Patent Office's refusal to grant the present application, in effect, casts a reflection on the patent which was issued on the divisional application. It appears that every divided rear bumper manufacturer in the United States today pays a royalty under the license of the present application, and that from October 1, 1929, to October 1, 1930, over 2,300,000 rear bumpers were manufactured under the aforementioned patents issued to the plaintiff, and under the license of the present application.

A careful reading of claims Nos. 3, 4, 9, and 15 upon which plaintiff primarily relies, and indeed of all of the other ten claims which were rejected by the Patent Office, satisfies the court that all of them are either (a) so broadly stated as to be covered by one or more of the claims of the Simms patent, issued March 6, 1906, hereinafter discussed, or (b) are not capable of patentable differentiation from one or more of the claims allowed in plaintiff's patent No. 1,519,540, issued on the divisional application, and its reissue No. 16,359. This being true, and it also being true that the present proceeding is not in the nature of an appeal but rather a trial de novo, with all the customary power of an equity court to hear the evidence fully

and to make its own findings, it becomes unnecessary to take up, seriatim, the specific grounds on which the Patent Office rejected the different claims, which rejection was affirmed without modification by the Court of Appeals in the District of Columbia.

Claim 3 reads as follows: "In combination, a motor vehicle frame and rear wheel fenders, and independent rear bumper members, one for each rear wheel fender, and each comprising a flat steel spring leaf constituting impact-receiving means connected to the side of the vehicle frame and projecting laterally outward to a point adjacent the outer side of the adjacent fender, and at a point rearwardly of the fender, the same bumpers offering substantially no obstruction at the rear of the vehicle inwardly beyond the sides of the frame, the impact and attaching portions of the bumpers being integral and formed of metal throughout, and all parts of the bumpers from their points of attachment at the sides of the frame being flexible throughout." Claim 3 of Simms reads as follows: "A buffer for motor-vehicles made in two sections, each of said sections comprising a yielding pad, a support for the same and a yielding connection between one end of said support and the vehicle, substantially as described." The Simms specifications provide that the buffers may be fitted in pairs to the front, "and, if desired, to the back of the vehicle frame. * * *" Figures 12 and 13 of the drawings accompanying the Simms specifications clearly embrace the same basic structure as that contemplated by claim 3 of the application in issue. Although when the Simms patent was issued no device was known for carrying spare tires on the rear of automobiles, nevertheless, the Simms device permits access to the rear end of the car in the same manner, and to the same extent, as does plaintiff's structure.

Claim 4, in issue, is substantially identical with claim 3, and is, therefore, equally anticipated by Simms. Claim 9 reads as follows: "The combination with the rear of an automobile of a pair of independent bumper members, comprising spaced impact portions connected at their innner end to the automobile frame and extending outwardly from each side thereof to a point adjacent the outer edge of the nearest fender and means extending from the outer end of said impact portions back to the automobile frame and connecting said outer end to the automobile frame." This claim is so broadly stated as clearly not to be capable of differentiation from Simms. Claim 15 has already been quoted. Claim 2 of Hammond patent No. 1,519,540, and reissue No. 16,359, reads as follows: "In combination with the rear end of an automobile provided with the usual chassis frame mud guards and spare tire holder, a pair of bumper members each provided with a resilient impact portion extending outwardly adjacent the rear fender to protect the same, and means in addition to said chassis frame supporting the bumper members in spaced apart operative position at the sides only of the spare tire holder." Clearly, a structure built in accordance with the former claim would meet all of the requirements of the latter claim, and vice versa.

We need not consider patent No. 1,062,462 to Harnishfeger, issued May 20, 1913, because that does not embrace a bumper, but merely a tire support. Patent No. 1,050,405 to Van Gelder, issued January 14, 1913, does embrace a bumper or fender. However, in view of the fact that in both claims allowed in this patent, a basic feature is the resilient sheet metal plate of entirely different design and construction from anything disclosed in the specifications or drawings of the present application, this patent can hardly be said to be an apposite reference, not to mention other features which may in and of themselves differentiate it. The remaining reference cited, namely, patent to Hoover No. 119,306, issued July 16, 1916, is clearly not germane, because it embraces exclusively a single or continuous spring buffer bar, and not independent members.

For the aforegoing reasons we are forced to the conclusion that there is no real structural line of division between any of the present claims and the Simms patent, or the plaintiff's patent No. 1,519,540, and reissue No. 16,359. We do not concede that both of the patents already issued to the plaintiff still leave him without protection on the use of bumperettes independently mounted at either side of the spare tire, and not cross-connected. There is no patentable structural distinction betwen the figures accompanying the application in suit, and the figures of patent No. 1,519,540, in so far as the transmission and absorption of impact on either bumperette is concerned. In all four instances the blow travels through the entire structure interconnected in substantially the same way; that is, through the arms and the tire supporting members (or the crossbar) from one bumperette to the other. It is only by a modification of the structure disclosed in the

drawings of the application in suit that plaintiff can establish the distinction, and if such modification be warranted with respect to any of the drawings in the present application, it is equally permissible with respect to the drawings in patent No. 1,519,540.

While it is true that the issuance of a patent for an improvement on a prior invention, or a different species of a prior invention, is no bar to the subsequent granting of claims to that prior invention on an earlier filed application, if the broad claims (as here) were presented before issuance of the subordinate patent, nevertheless, it is not true that one has a right to a patent on a structure not divisible from that shown in a prior pending application, embracing claims broad enough to read thereon, and then be granted claims in the prior application broad enough to read on both. The present plaintiff, having filed a divisional application, is not entitled to an allowance of the present claims, there being no structural line of division between the claims embraced in both cases.

This case is controlled by the rule laid down by the Supreme Court in Miller v. Eagle Manufacturing Co., 151 U. S. 186, pages 198, 199, 201, 14 S. Ct. 310, 315, 38 L. Ed. 121, where the court said:

"The result of the foregoing and other authorities is that no patent can issue for an invention actually covered by a former patent, especially to the same patentee, although the terms of the claims may differ; that the second patent, although containing a broader claim, more generical in its character, than the specific claims, contained in the prior patent, is also void; but that where the second patent covers matter described in the prior patent, essentially distinct and separable from the invention covered thereby, and claims made thereunder, its validity may be sustained.

"In the last class of cases it must distinctly appear that the invention covered by the later patent was a separate invention, distinctly different and independent from that covered by the first patent; in other words, it must be something substantially different from that comprehended in the first patent. It must consist in something more than a mere distinction of the breadth or scope of the claims of each patent. If the case comes within the first or second of the above classes, the second patent is absolutely void.

"It is insisted on the part of the appellee that 'whether this invention shall be protected in part of its features by one patent, and as to the rest by another, or shall be completely protected by a single patent, is a matter which concerns solely the patent office and the inventor.' Under the rule announced in the foregoing authorities, this proposition cannot be sustained. * * *

"A single invention may include both the machine and the manufacture it creates; and in such cases, if the inventions are really separable, the inventor may be entitled to a monopoly of each. It is settled, also, that an inventor may make a new improvement on his own invention of a patentable character, for which he may obtain a separate patent; and the cases cited by the appellee come to this point, and to this point only: That a letter patent may be granted where the invention is clearly distinct from, and independent of, one previously patented. * * *

"It is not the result, effect, or purpose to be accomplished which constitutes invention, or entitles a party to a patent, but the mechanical means or instrumentalities by which the object sought is to be attained; but a patentee cannot so split up his invention for the purpose of securing additional results, or of extending or of prolonging the life of any or all of its elemental parts. Patents cover the means employed to effect results. Rubber Tip Pencil Co. v. Howard, 20 Wall. 498, 507 [22 L. Ed. 410]; Fuller v. Yentzer, 94 U. S. 288 [24 L. Ed. 103]."

See, also, Vapor Car Heating Co. v. Gold Car Heating & Lighting Co. (D. C.) 296 F. 188; Id. (C. C. A.) 16 F.(2d) 194; Id., 268 U. S. 705, 45 S. Ct. 639, 69 L. Ed. 1167.

For the aforegoing reasons, it being determined that the claims here in controversy are not patentable, the bill of complaint must be dismissed.